IN RE the PATERNITY OF ROGER D. H.:

ROGER D. H., by his Guardian ad Litem, Rebecca M. Richards-Bria, Appellant,

PATRICIA C., Petitioner,

v.

VIRGINIA O., Respondent-Respondent.

Court of Appeals

*No. 00–3333. Submitted on briefs July 9, 2001.—Decided January 17, 2002.*

2002 WI App 35

(Also reported in 641 N.W.2d 440.)

On behalf of the appellant, the cause was submitted on the briefs of *Rebecca M. Richards-Bria* of *Curran, Hollenbeck & Orton, S.C.*, Mauston.

On behalf of the petitioner, the cause was submitted on the brief of *Patricia C.*

On behalf of the respondent-respondent, the cause was submitted on the brief of *Daniel M. Berkos* of *Berkos Law Office*, Mauston.

Before Vergeront, P.J., Deininger and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Roger D.H., by his guardian ad litem, appeals an order of the circuit court vacating a prior order establishing visitation rights on behalf of Roger D.H.'s grandmother.[1] The parties raise the following issues: (1) whether the circuit court erred when it vacated a visitation order providing for grandparent visitation because the court believed it could not interfere with the mother's decision-making authority "absent a finding that [she] is an unfit parent"; and (2) whether the circuit court was prohibited from granting visitation to the grandmother because WIS. STAT. § 767.245(3) (1997–98)[2] is facially unconstitutional in that it does not require courts to give presumptive weight to a fit parent's decision regarding non-parental visitation.

¶ 2. We conclude that the circuit court erred when it determined that it could not grant visitation rights to the grandmother absent a showing of parental unfit-

---

[1] The grandmother, Patricia C., did not file a notice of appeal in this case. She did, however, write a letter to this court explaining why she believed the circuit court's ruling was incorrect. In a prior order, we mistakenly indicated that the grandmother believed the circuit court's ruling was correct, rather than incorrect. The grandmother was subsequently listed as a respondent on appeal even though her interests are not adverse to the appellant's. We therefore amend the caption in this case to correctly reflect the parties' respective positions on appeal.

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

ness. We reject the argument that Wis. Stat. § 767.245(3) is facially unconstitutional. We reverse and remand for further proceedings.

### *Background*

¶ 3. Roger D.H. was born July 27, 1986. Virginia O. is Roger's biological mother. She did not marry Roger's biological father. In April of 1997, Roger D.H. was the subject of a paternity action. Roger's mother has sole custody. Roger's father is not a party to this action and he had no visitation rights at the time this action was pursued before the circuit court.

¶ 4. Patricia C. is the paternal grandmother of Roger D.H. In 1996, Roger's mother and his paternal grandmother entered into a court-approved stipulation providing the grandmother with visitation rights. An order was entered in August of 1996 setting forth the stipulation.

¶ 5. In 1999, the grandmother filed a motion to compel compliance with the 1996 order, asserting that the mother had denied her visitation on at least seven occasions. Thereafter, the mother filed a motion to "modify" the stipulation, seeking in actuality to vacate the stipulation. In an attached affidavit, the mother asserted there had been a substantial change in circumstances and grandparent visitation was no longer in Roger D.H.'s best interest. A guardian ad litem was appointed to represent Roger D.H.

¶ 6. At some point during these proceedings, the parties became aware of the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57 (2000). Over the course of two hearings, the parties presented argument on the effect of *Troxel* on Wis. Stat. § 767.245(3). The mother argued that *Troxel* re-

751

quires some showing of unfitness before a court may interfere with a parent's decision on visitation issues. The mother asked the circuit court to invalidate the 1996 stipulation and order.

¶ 7. The circuit court issued an order on November 21, 2000, concluding that both WIS. STAT. § 767.245(3) and the criteria set forth in *Troxel* were applicable to this case.[3] The circuit court concluded that as a fit parent, the mother has the right to make decisions concerning the best interest of her child and,

---

[3] WISCONSIN STAT. § 767.245(3) reads as follows:

The court may grant reasonable visitation rights, with respect to a child, to a grandparent of the child if the child's parents have notice of the hearing and the court determines all of the following:

(a) The child is a nonmarital child whose parents have not subsequently married each other.

(b) Except as provided in sub. (4), the paternity of the child has been determined under the laws of this state or another jurisdiction if the grandparent filing the petition is a parent of the child's father.

(c) The child has not been adopted.

(d) The grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so by a parent who has legal custody of the child.

(e) The grandparent is not likely to act in a manner that is contrary to decisions that are made by a parent who has legal custody of the child and that are related to the child's physical, emotional, educational or spiritual welfare.

(f) The visitation is in the best interest of the child.

Roger D.H. is a nonmarital child who has not been adopted and whose paternity has been established. Thus, we agree with the circuit court that subsection (3) of § 767.245 is applicable to this case.

"absent a finding that [she] is an unfit parent," the court could not interfere with her decision regarding visitation. Because the court believed the 1996 stipulation and order interfered with the mother's decision-making rights, the court vacated the order. Roger D.H.'s guardian ad litem appeals.

## *Discussion*

¶ 8. The paternal grandmother in this case is seeking to maintain visitation rights with Roger D.H., a minor whose mother opposes the visitation. Roger's guardian ad litem has determined that it is in Roger's best interest to maintain visitation with his grandmother and, therefore, she has appealed the circuit court decision in favor of the mother. As described above, Roger's grandmother participated in the trial court proceedings and sent a letter to this court opposing the trial court order, but she did not file a notice of appeal. Although it is the guardian ad litem's brief that we consider on appeal, we think clarity will be served if we refer to the arguments of the guardian as those of the grandmother.

### *A. Standard of Review*

■■■■

¶ 9. The decision whether to grant or deny visitation is within the circuit court's discretion. *See Biel v. Biel*, 114 Wis. 2d 191, 194, 336 N.W.2d 404 (Ct. App. 1983). We will affirm a circuit court's discretionary determination so long as it examines the relevant facts, applies the proper legal standard, and uses a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *F.R. v. T.B.*, 225 Wis. 2d 628, 637, 593 N.W.2d 840 (Ct. App. 1999). Additionally,

we will uphold the circuit court's discretionary determination if we can independently conclude that the facts of record applied to the proper legal standards support the court's decision. *See Andrew J.N. v. Wendy L.D.*, 174 Wis. 2d 745, 767, 498 N.W.2d 235 (1993). When a party contends that the circuit court erroneously exercised its discretion because it applied an incorrect legal standard, we review that issue *de novo. F.R.*, 225 Wis. 2d at 637.

### B. Unfitness Requirement

¶ 10. The grandmother argues that the circuit court improperly read into WIS. STAT. § 767.245(3) a requirement that a court find a custodial parent unfit before the court can interfere with the parent's decision regarding visitation. We agree.

¶ 11. In its November 21, 2000, order, the circuit court concluded, as a matter of law, that it did not have authority to interfere with the mother's right to make decisions concerning the best interest of her child, absent a finding that the mother is an unfit parent. The court found that the mother is a fit parent and concluded that the visitation stipulation interfered with her right to make visitation decisions.

¶ 12. The circuit court applied an incorrect legal standard. Nothing in WIS. STAT. § 767.245 requires a showing of parental unfitness before a court may override a parent's decision regarding grandparent visitation, nor do we find any case law from this state holding as much. The circuit court may have believed that the United States Supreme Court imposed such a requirement in *Troxel*. If so, we disagree. There is no suggestion in *Troxel* that a court may only interfere with a

parent's decision regarding visitation if the parent is shown to be unfit. Rather, the *Troxel* Court's parental fitness discussion is in the context of explaining that there is a presumption that fit parents act in the best interest of their children. *See Troxel*, 530 U.S. at 68.

## C. Constitutional Challenge

¶ 13. Roger D.H.'s mother suggests an alternative ground on which to affirm the circuit court order. She argues that *Troxel* "makes it clear that a statute that fails to show deference to a parent's decision-making does not meet the constitutional safeguards of the Fourteenth Amendment." Her argument amounts to an assertion that WIS. STAT. § 767.245 is facially unconstitutional under *Troxel* because the statute does not require that courts give presumptive weight to a fit parent's decision regarding non-parental visitation and, therefore, the circuit court was without statutory authority to grant visitation to the grandmother.[4] However, while *Troxel* does require that courts accord a

---

[4] While we reject the mother's constitutional challenge to the statute on the merits of that argument, we note that the record does not show that the mother gave notice to the attorney general, and neither party raises notice as an issue. *See* WIS. STAT. § 806.04(11). Nevertheless, the mother's failure to notify the attorney general does not create a jurisdictional bar to our review, because this proceeding is not an action for declaratory judgment. *See W.W.W. v. M.C.S.*, 161 Wis. 2d 1015, 1025 n.6, 468 N.W.2d 719 (1991). The rule requiring notice to the attorney general when a party is challenging the constitutionality of a statute was designed to allow the state to defend the validity of its statutes. *William B. Tanner Co. v. Estate of Fessler*, 100 Wis. 2d 437, 444, 302 N.W.2d 414 (1981). We invited the attorney general to submit a brief, recognizing that the state not only has an interest in having its statutes upheld against constitutional challenge, but also has an interest in the

presumption that fit parents act in the best interests of their children, it provides no support for the mother's claim that § 767.245 is facially unconstitutional. To the contrary, *Troxel* strongly suggests that we may read such a requirement into the statute to save it from facial invalidation.

¶ 14. The Washington statute at issue in *Troxel* is exceedingly broad. It provides:

> Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.

WASH. REV. CODE § 26.10.160(3) (1994); *see Troxel*, 530 U.S. at 61. Acting under the authority provided by this statute, a Washington state trial court granted more visitation than the mother desired to the paternal grandparents of a child born out of wedlock.

¶ 15. In analyzing the case, the *Troxel* Court began by observing that the Due Process Clause of the Fourteenth Amendment "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66. The Court went on to state: "there is a presumption that fit parents act in the best interests of their children." *Id.* at 68. The Court explained, "[t]he problem here is not that the Washington [trial court] intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests." *Id.* at 69. The *Troxel* Court said:

---

manner in which a statute is upheld. However, the attorney general elected not to submit a brief.

> [The Washington statute] contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests.

*Id.* at 67.

¶ 16. Despite these observations and conclusions, and despite the fact that the Washington statute contained no language suggesting that courts should give weight to a fit parent's decision, the United States Supreme Court did not find the Washington statute facially unconstitutional. *Id.* at 75. Instead, the *Troxel* Court opted to find the particular application of the statute unconstitutional because the trial court had acted on "slender findings" and because it used an impermissible presumption. *Id.* at 72–73. Rather than give the required presumptive weight to the parent's decision, the Washington trial court improperly presumed that grandparent visitation was in the best interest of the children. *Id.*

¶ 17. The *Troxel* Court noted that the Washington state courts could have given the broad language of the statute a "narrower reading" comporting with the "special weight" which must be accorded decision-making by fit parents, but "declined to do so." *Id.* at 67–69. Also, by way of explaining its "as applied" holding, the Court said: "Because much state-court adjudication in this context occurs on a case-by-case basis,

we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter." *Id.* at 73.

¶ 18. We glean from *Troxel* two propositions relevant to the issue before us. First, due process requires that courts apply a presumption that a fit parent's decision regarding non-parental visitation is in the best interest of the child. Second, a state court may read this requirement into a non-parental visitation statute, even when the statute is silent on the topic.

¶ 19. Accordingly, we hold that when applying Wis. Stat. § 767.245(3), circuit courts must apply the presumption that a fit parent's decision regarding grandparent visitation is in the best interest of the child. At the same time, we observe that this is only a presumption and the circuit court is still obligated to make its own assessment of the best interest of the child. *See* § 767.245(3)(f). What the Due Process Clause does not tolerate is a court giving no "special weight" to a fit parent's determination, but instead basing its decision on "mere disagreement" with the parent. *Troxel*, 530 U.S. at 68–69.

¶ 20. The approach we use here is consistent with the analysis in *Troxel* and implicitly approved of in that decision. We acknowledge that this approach is seemingly at odds with some decisions of our state supreme court. On occasion, our supreme court has declined to read a requirement into a statute to save it from facial constitutional invalidity absent either (1) guidance from prior judicial construction of analogous language or (2) the availability of language in the text of the statute supporting the requirements. *See, e.g., State v. Stevenson*, 2000 WI 71, ¶¶ 28–34, 236 Wis. 2d 86, 613

N.W.2d 90. However, at other times our supreme court has, consistent with our approach here, read in requirements in the absence of prior authority or textual support. *See, e.g., State ex rel. Deisinger v. Treffert,* 85 Wis. 2d 257, 267–68, 270 N.W.2d 402 (1978) (in the absence of textual support, court read a release requirement into a statute specifying the maximum confinement of persons deemed incompetent to stand trial); *Huebner v. State,* 33 Wis. 2d 505, 528–29, 147 N.W.2d 646 (1967) (in the absence of textual support, court read a hearing requirement into the Sex Crimes Act).[5]

¶ 21. Because we conclude that the circuit court applied an erroneous legal standard, we reverse and remand for further proceedings. On remand, the circuit court should reconsider the grandmother's request for visitation under WIS. STAT. § 767.245(3), giving presumptive weight to the mother's decision regarding non-parental visitation.

---

[5] In addition, although not in the context of a constitutional challenge, the supreme court has interpreted WIS. STAT. § 767.245 to require both an underlying action affecting the family and a nonintact family before a party has standing to seek visitation. *See, e.g., Cox v. Williams,* 177 Wis. 2d 433, 439, 502 N.W.2d 128 (1993) (citing *Van Cleve v. Hemminger,* 141 Wis. 2d 543, 549, 415 N.W.2d 571 (Ct. App. 1987)). This is true despite the fact that § 767.245 does not explicitly require the presence of either factor before a circuit court may determine whether visitation is in the best interest of the child. WIS. STAT. § 767.245; *see also Holtzman v. Knott,* 193 Wis. 2d 649, 666–67, 533 N.W.2d 419 (1995). These requirements have been read into § 767.245 based on the court's assumption that the legislature did not intend the visitation provision to reach into intact families and override parental determinations with respect to visitation. *See id.* at 675.

*By the Court.*— Order reversed and cause remanded with directions.