Christine OLIVAREZ and Daniel J. Olivarez, Plaintiffs-Respondents,

UNITED HEALTHCARE, INC. and Ingenix Subrogation Services, d/b/a CT Corporation System, Involuntary-Plaintiffs,

v.

UNITRIN PROPERTY & CASUALTY INSURANCE COMPANY and Paul Kucza, Defendants,

CANNON & DUNPHY, S.C., Proposed-Intervenor-Appellant.

Court of Appeals

*No. 2005AP2471. Submitted on Briefs May 15, 2006. —Decided August 30, 2006.*

2006 WI App 189

(Also reported in 723 N.W.2d 131.)

337

340

On behalf of the proposed-intervenor-appellant, the cause was submitted on the briefs of *Terry E. Johnson*, of *Peterson, Johnson & Murray, S.C.*, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *James J. Gende II*, of *Gende Law Offices, S.C.*, of Waukesha.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. The law firm of Cannon & Dunphy, S.C., appeals from an order denying as untimely its motion to intervene to enforce its attorney's lien in a negligence action that had settled. Were the question one of law, or were we ruling in the first instance rather than as an appellate body, we likely would rule for Cannon & Dunphy. But given the deference we must accord the trial court's discretionary call, we are constrained to affirm the trial court's ruling. Our reluctance is tempered, however, because even were we to conclude that the court's timeliness determination was erroneous, we would affirm on the ground that Cannon & Dunphy's interest, if any, was not impaired or impeded by the denial of its motion.

## BACKGROUND

¶ 2. The facts are undisputed. James Gende joined Cannon & Dunphy as an associate attorney in May 2000. Gende and Cannon & Dunphy entered into an employment agreement governing the terms of

Gende's employment. In April 2003 after being bitten by a dog, Christine Olivarez signed a retainer agreement with Cannon & Dunphy; Olivarez' personal injury file was assigned to Gende. Under the retainer agreement, Olivarez gave Cannon & Dunphy a lien pursuant to WIS. STAT. § 757.36 (2003–04)[1] for one-third of her proceeds, should recovery be made on her claim, and agreed to reimburse Cannon & Dunphy for reasonable costs, expenses and disbursements.

¶ 3. In April 2004 Gende left Cannon & Dunphy to start his own practice. Olivarez elected to be represented by Gende. At the time Cannon & Dunphy transferred her file to Gende's new office, no lawsuit had been commenced.

¶ 4. Prior to his departure, Gende signed a separation agreement with Cannon & Dunphy setting forth the terms and conditions of the termination of his employment.[2] It provided, in part, for a twenty/eighty split on former Cannon & Dunphy cases where the client elected Gende's representation: Gende would get twenty percent of the fees recovered, after payment of any referral fees due, and Cannon & Dunphy would get eighty percent. The separation agreement also provided that "current retainer agreements and liens are valid and binding on all clients of Cannon & Dunphy, S.C."

¶ 5. By letter dated May 14, 2004, Cannon & Dunphy notified Unitrin Property & Casualty Insurance Company, the defendant insurer, of Cannon & Dunphy's lien for fees and costs. On May 18, it sent a

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The separation agreement contains a confidentiality clause but the parties both freely discuss its terms in their briefs and the terms are germane to our discussion of the issues presented.

343

second letter to Unitrin, this one requesting that Cannon & Dunphy's name be included on any settlement check. Gende was copied on both letters.

¶ 6. Gende filed suit on behalf of Olivarez on June 7, 2004. Trial was set for March 22, 2005. On March 21, Gende notified Cannon & Dunphy's legal counsel by e-mail that the case had settled for $44,000. That same day, Cannon & Dunphy advised the defendants' attorney by telephone and by letter, on which Gende was copied, of Cannon & Dunphy's lien interest and its request to have its name included on the settlement check. The settlement check included Cannon & Dunphy's name and was sent to them for endorsement. Cannon & Dunphy endorsed the check and sent it with an accompanying letter dated April 6, 2005, stating that the check was endorsed "*in trust* under the express conditions that you pay all attorney fees and costs directly to us or hold all attorneys fees and all costs in escrow and immediately provide a copy of the client[-]signed settlement statement" to Cannon & Dunphy. On April 7, Cannon & Dunphy moved to intervene in the action to enforce its attorney's lien. The stipulation and order dismissing Olivarez' case was later signed on April 28.

¶ 7. Other motions relative to the case also were filed. On April 14, Olivarez moved to consolidate this case with a declaratory action filed by Gende against Cannon & Dunphy relating to separation agreement issues.[3] On May 16, Cannon & Dunphy moved to strike an affidavit Gende had filed in opposition to Cannon & Dunphy's motion to intervene, and for sanctions. Al-

[3] The declaratory action was dismissed by Washington County Circuit Court Judge David Resheske in a decision dated April 26, 2006.

though the underlying case was dismissed on April 28, the motions to intervene and to consolidate were not argued until May 23. The circuit court issued its oral decision on July 28 and entered its written order on August 23. The court denied Cannon & Dunphy's motion to intervene as untimely because the court "considers this case closed." It also denied Gende's motion to consolidate and Cannon & Dunphy's motion to strike and for sanctions. Cannon & Dunphy appeals.

## DISCUSSION

¶ 8. Cannon & Dunphy contends that it meets all the requirements of the intervention statute and intervention therefore should have been granted as a matter of right. Specifically, it argues that the circuit court's untimeliness ruling is erroneous because it imposed "a standard for intervention that no litigant could meet" and failed to consider the prejudice prong of the timeliness analysis.

¶ 9. Gende opposes the intervention on grounds that it is a contract dispute between law firms, a clash discrete from the subject matter of the underlying tort action.[4] Gende stridently challenges the employment and separation agreements as being unethical and against public policy, argues that such agreements cannot create a postsettlement statutory lien against a client, and contends that Olivarez's own retainer contract with Cannon & Dunphy failed to reserve a lien with that firm if she discharged it.

[4] We recognize that this case identifies Olivarez as the respondent. However, the core dispute is between Cannon & Dunphy and Gende on the question of the attorney fees. Therefore, we will refer to Gende when speaking to the arguments made in the name of Olivarez.

¶ 10. As we see it, the issues raised by the employment and separation "disagreements" not only are peripheral to our task but are not before us on this appeal. Instead, the narrow issue before us is whether the circuit court properly denied a motion for intervention as of right. The even narrower threshold issue is whether the circuit court properly exercised its discretion in denying as untimely Cannon & Dunphy's motion to intervene.

¶ 11. Intervention is "[t]he entry into a lawsuit by a third party who, despite not being named a party to the action, has a personal stake in the outcome." *City of Madison v. WERC*, 2000 WI 39, ¶ 11 n.7, 234 Wis. 2d 550, 610 N.W.2d 94 (quoting BLACK'S LAW DICTIONARY 826 (7th ed. 1999)). The effect of intervention is to make the intervenor a full participant in the lawsuit. 59 AM. JUR. 2D *Parties* § 160 (2002). Although it is not always the case, a settlement between the original parties generally precludes any right of intervention. *Id.*, § 227.

¶ 12. WISCONSIN STAT. § 803.09(1)[5] governs intervention as of right. The Wisconsin Supreme Court has interpreted it as establishing four requirements:

> (1) timely application for intervention; (2) an interest relating to the property or transaction which is the

---

[5] WISCONSIN STAT. § 803.09(1) provides:

Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

subject of the action; (3) that the disposition of the action may as a practical matter impair or impede the proposed intervenor's ability to protect that interest; and (4) that the proposed intervenor's interest is not adequately represented by existing parties.

*State ex rel. Bilder v. Township of Delavan,* 112 Wis. 2d 539, 545, 334 N.W.2d 252 (1983). The burden is on the party seeking to intervene to show that the factors are met, *see Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002) (construing FED. R. CIV. P. 24(a)),[6] and to show circumstances justifying intervention at a late stage of the litigation. *Sewerage Comm'n of Milwaukee v. DNR*, 104 Wis. 2d 182, 186, 311 N.W.2d 677 (Ct. App. 1981). Failure to establish one element means the motion must be denied. *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985).

## Standard of Review

■

¶ 13. The application of the intervention statute to a given set of facts is a question of law subject to our de novo review. *C.L. v. Edson*, 140 Wis. 2d 168, 175, 409 N.W.2d 417 (Ct. App. 1987). We focus first on the timeliness factor here because that is the basis upon which Cannon & Dunphy's motion was denied.

---

[6] Because WIS. STAT. § 803.09(1) is based on FED. R. CIV. P. 24(a)(2), we may look to cases and commentary relating to Rule 24(a)(2) for guidance in interpreting § 803.09(1). *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 547, 334 N.W.2d 252 (1983); *see also State v. Evans*, 2000 WI App 178, ¶ 8 n.2, 238 Wis. 2d 411, 617 N.W.2d 220 ("[W]here a state rule mirrors the federal rule, we consider federal cases interpreting the rule to be persuasive authority.").

¶ 14. Timeliness is not defined by statute, and there is no precise formula to determine whether a motion to intervene is timely. *See id.* at 178. The question of timeliness, therefore, is a determination necessarily left to the discretion of the circuit court. *See Bilder*, 112 Wis. 2d at 550. The discretionary standard reflects the view that a circuit court, due to its proximity to the dispute, usually has a better sense of the case's factual nuances upon which a motion to intervene often turns. *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001).

¶ 15. Two factors play into a circuit court's discretionary determination of timeliness: whether, in light of all the circumstances, the proposed intervenor acted promptly, and whether the intervention will prejudice the original parties to the lawsuit. *Bilder*, 112 Wis. 2d at 550. The "critical factor" is whether, under the circumstances, the proposed intervenor acted promptly. *Id.* Promptness can be further broken down into two factors: when the proposed intervenor discovered its interest was at risk and how far litigation has proceeded. *See Roth v. LaFarge School Dist. Bd. of Canvassers*, 2001 WI App 221, ¶ 17, 247 Wis. 2d 708, 634 N.W.2d 882.

¶ 16. This case keenly illustrates how the standard of review defines our role. We therefore take a moment to restate some basic principals governing review of a discretionary determination. Our review of a trial court's discretionary decision is highly deferential. *Tralmer Sales & Serv., Inc. v. Erickson*, 186 Wis. 2d 549, 572, 521 N.W.2d 182 (Ct. App. 1994). "Discretion" contemplates a measure of latitude which recognizes that the circuit court might reach a decision that another judge or court

might not reach, without making what the circuit court did erroneous. *See Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981); *see also State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995) (stating that the exercise of discretion carries with it "a limited right to be wrong" without the danger of incurring reversal). Discretionary determinations are not tested on appeal by our sense of what might be a "right" or "wrong" decision in the case. *Jeske*, 197 Wis. 2d at 913. Rather, the determination will stand "unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion." *Id.*

¶ 17. In conducting our review, we must examine the circuit court's on-the-record explanation of the reasons underlying its decision. *Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37 (Ct. App. 1991). Reasons must be stated, but "need not be exhaustive." *Id.* It is enough that we can glean from them that the circuit court undertook a reasonable inquiry and examination of the facts and that the record shows a reasonable basis for its determination. *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 471, 326 N.W.2d 727 (1982). Because the exercise of discretion is so essential to a circuit court's functioning, *Burkes*, 165 Wis. 2d at 591, we will search the record for reasons to sustain its exercise of discretion. *Randall v. Randall*, 2000 WI App 98, ¶ 7, 235 Wis. 2d 1, 612 N.W.2d 737.

*Analysis*

1. Timeliness

¶ 18. With these principals in mind, we turn to the case at hand. At the end of the May 23, 2005 motion hearing, the circuit court declined to make an immedi-

ate decision, so as to permit it to review all the material because it did not want to "shoot from the hip." In its July 28, 2005 oral decision, the circuit court made numerous express findings, including the timeline of events from the filing of the lawsuit on June 7, 2004, to the jury trial scheduled for March 22, 2005, the case's settlement the day before trial, the signing of the stipulation and order by defendants on April 4 and plaintiffs on April 6, and Cannon & Dunphy's filing of its motion to intervene on April 7. The court also observed that it heard oral arguments on May 23 "even though this case had already been closed approximately a month before" and that, per the scheduling order, the time for filing amended pleadings was September 9, 2004. It then impliedly found that permitting intervention once the case had settled would prejudice the plaintiffs and defendants (finding that there was "no reason . . . to involve the Olivarezes and [the defendants]"). Concluding that Cannon & Dunphy's motion to intervene was untimely because "this case is closed," the court denied the motion.

¶ 19. Cannon & Dunphy contends, however, that this finding of untimeliness is untenable under the case law, and cites several cases in which the motion for intervention was granted, among them *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 601 N.W.2d 301 (Ct. App. 1999); *Pyle-National Co. v. Amos*, 172 F.2d 425, 428 (7th Cir. 1949); and *Edson*. In *Edson*, for example, after unsuccessfully exerting other efforts to gain access to sealed settlement records, a newspaper was permitted to intervene nine months after the action's dismissal. *Edson*, 140 Wis. 2d at 173–74. In *Wolff*, the court of appeals reversed the circuit court's denial of a motion to intervene, observing that such a motion should be viewed "practically, not technically, with an eye toward

350

'disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.' " *Wolff*, 229 Wis. 2d at 742–43 (quoting *Bilder*, 112 Wis. 2d at 548–49). In *Pyle-National Co.*, 172 F.2d at 426, a stockholder brought its motion to intervene[7] in plaintiff corporation's suit against former officers for misappropriation of corporate funds on the day of settlement. The district court denied the motion as untimely and the court of appeals reversed. *Id.* at 428.

¶ 20. We take no issue with these cases in general, inasmuch as they illustrate that timeliness turns on whether, under all the circumstances, a proposed intervenor acted promptly and whether intervention will prejudice the original parties. We disagree, however, that they compel a conclusion that the circuit court erred here. In *Edson*, for example, the intervention motion granted nine months postjudgment was challenged as untimely. *Edson*, 140 Wis. 2d at 175. The court of appeals acknowledged the general rule that postjudgment motions for intervention will be granted only upon a strong showing of justification for failure to request intervention sooner and that a postjudgment motion to intervene by its nature prolongs litigation beyond the point anticipated by the original parties. *Id.* at 178. Nonetheless, it affirmed. Observing that newspapers enjoy a particular position as a representative of the public entitling them to access to court records, *id.*

---

[7] *Pyle-National Co. v. Amos*, 172 F.2d 425, 426 (7th Cir. 1949), may have involved permissive intervention under FED. R. CIV. P. 24 rather than intervention as of right ("[The proposed intervenor] . . . served a written notice . . . asking leave to intervene . . . ."). The case does not make it clear, but that distinction is not critical as it applies here.

351

at 176, 177, and that "the newspaper could not have known its interests in disclosure until it discovered the judgment approving settlements that called for secrecy," *id.* at 178, the court concluded the motion was prompt *"under the unique facts of this case,"* and that it would not prejudice the original parties by making the lawsuit complex or unending. *Id.* at 179 (emphasis added). A law firm does not enjoy the same status as public representative that a newspaper does, and Cannon & Dunphy knew of its claimed interest prior to settlement. *Edson*'s "unique facts" limit its application.

¶ 21. *Pyle-National Co.* likewise does not motivate us to reverse. There, before seeking to intervene, the proposed intervenor alleged that, in addition to the corporate officers, various directors on the board also were involved in serious wrongdoing and that the intervenor had served a written notice on the plaintiff to add the directors as defendants. *Pyle-National Co.*, 172 F.2d at 426–27. Upon learning of those efforts, the defendants arranged a suspect settlement. *See id.* at 427–28. The court of appeals reversed on grounds that the proposed intervenor acted with due diligence and the "serious charges" he raised against the former directors required that he be "given the opportunity of proof." *Id.* at 428. Cannon & Dunphy casts its presettlement efforts to secure its lien rights as exhibiting similar diligence; the circuit court evidently viewed them as neglected opportunities to seek to intervene.

¶ 22. Finally, *Wolff* applies only for the general propositions it states because timeliness was not at issue there. *See Wolff*, 229 Wis. 2d at 743 ("[T]he parties agree that the Town's motion to intervene was timely.").

¶ 23. Therefore, while those cases may have supported late-stage intervention based upon their own facts and circumstances, in our view they do not spell

out a rule mandating it here. Rather, we read these cases as reflecting the wide range of appropriate choices inherent in a court's exercise of discretion.

¶ 24. Moreover, the record supports the circuit court's findings. Cannon & Dunphy notified the defendant insurer of its lien claim on May 14 and May 18, 2004, even before Gende filed the Olivarez lawsuit on June 7, 2004. It made no move to intervene, however, even though the idea of intervening as to a "Gende case" was not new to them: in at least two other cases, Gende advised Cannon & Dunphy upon settlement that if it intended to assert a lien for fees and costs, it should "proceed with a motion to intervene. Failure to do so may be construed as a waiver of any right [Cannon & Dunphy] may have regarding a lien." Not until the parties here reached a settlement nine months later, the day before trial was to begin, did Cannon & Dunphy file its motion to intervene. Interestingly, we note that Cannon & Dunphy itself was not confident of the propriety of intervention at that stage of the litigation: its counsel observed at the motion hearing that "technically . . . [this] is a closed case in which we seek to intervene" and conceded that he did not know whether that was permissible. We conclude that Cannon & Dunphy did not carry its burden of justifying its late-stage effort to intervene and of establishing promptness.

¶ 25. We also conclude that just as promptness was not demonstrated, prejudice to the original parties was. The trial court made no specific or explicit finding of prejudice, but did say it saw no reason to further involve the original parties in any proceedings between Gende and Cannon & Dunphy. The record bears out that both Gende and Cannon & Dunphy claim entitlement to fees from clients such as Olivarez and that the

wrangling over these fees has been contentious and persistent. The court's determination not to further involve the plaintiffs or defendants reasonably may have stemmed from a concern that the acrimony would in some manner negatively impact the underlying claim. Under all of the circumstances, we see no misuse of discretion. While we might have granted it, we conclude that denying the motion is defensible as within the court's broad discretion.

## 2. Impairment of Interest

■

¶ 26. Even were we to conclude that the motion to intervene was timely, however, we still would affirm. In addition to a timely motion, the movant also must establish that without intervention its ability to protect its interest would be impaired or impeded. *Bilder*, 112 Wis. 2d at 545.[8]

---

[8] Moving directly to the third *Bilder* factor presumes, of course, the existence of the second: whether Cannon & Dunphy's interest is one relating to the property or transaction in the underlying litigation. *See Bilder*, 112 Wis. 2d at 545. We will accept that its interest is, but only for the sake of argument. First, federal case law exists suggesting that an attorney's lien may not be such an interest. *See Butler, Fitzgerald & Potter v. Sequa*, 250 F.3d 171, 177 (2d Cir. 2001) ("The interest of discharged counsel seemingly is not in the subject of the underlying action, *i.e.*, the . . . dispute that precipitated the litigation, but is rather an interest in recovering delinquent attorney's fees following an award in favor of its former client."). Second, Cannon & Dunphy argues that its interest exists in part because of its separation agreement with Gende. The ongoing dispute between Gende and Cannon & Dunphy over the validity of the agreements and those agreements' impact on Gende's representation of former Cannon & Dunphy clients in our mind

¶ 27. As to the impairment factor, Cannon & Dunphy's argument is brief. It first quotes another circuit court that granted Cannon & Dunphy's motion to intervene to enforce its lien in a different case where Gende represented a former Cannon & Dunphy client. That court said only that to not let Cannon & Dunphy intervene "would practically impair or impede their ability to protect that interest."

¶ 28. That one-line statement from another court on another case does not compel the result Cannon & Dunphy urges here. Cannon & Dunphy does not elaborate on the underpinnings of the other case. As we have stated, whether to allow or deny intervention under the statute is a question of law which we review de novo. *Edson,* 140 Wis. 2d at 175. If we owe no deference to the circuit court's determination in the instant matter, we certainly owe none to another circuit court's determination arising out of another matter, the facts of which may or may not mirror those here and may or may not have been in dispute.

¶ 29. Cannon & Dunphy also contends that the fact that an intervenor may protect its interest by bringing a separate action does not defeat its right to intervene. *See* 59 Am. Jur. 2d *Parties* § 185 (2002). That general rule, however, is explained further:

> Because the intervenor must have an interest in the subject matter of the underlying action, if a party seeking intervention will be left with the right to pursue an independent remedy against the parties in the primary proceeding, regardless of the outcome of the pending case, then the party has no interest that needs protecting by intervention of right. It is only

leaves that factor unsettled for now. We repeat that the validity and enforceability of those agreements are not before us on this appeal.

> where the interest is in the same subject matter that the effect of other remedies is immaterial to intervention.

*Id.* (footnotes omitted).

¶ 30. This clarifies that Cannon & Dunphy does not have an interest that needs protecting by intervention of right. Olivarez' attorney fees already have been paid and assertedly are on deposit with the clerk of court. Even if Olivarez herself had the money, Cannon & Dunphy would have been "left with the right to pursue an independent remedy" against her. Its grievance now, however, is with Gende, not Olivarez. Cannon & Dunphy has no interest that needs protecting by intervention of right.

¶ 31. In denying Cannon & Dunphy's motion to intervene, the circuit court stated that "there is no reason for this Court to involve the Olivarezes" and the defendants. Implicit in this comment is the idea that Cannon & Dunphy's claim is integrally tied to Gende, not Olivarez, and that Cannon & Dunphy still may bring an action against Gende to recover the portion of attorney fees and costs it contends is its due. Furthermore, we see no reason that the particular judge involved in the underlying action is better positioned than another to determine the attorney fees and costs issue. Cannon & Dunphy's failed motion does not deprive it of another opportunity in another forum to argue the existence and enforceability of its lien. *See Wolff*, 229 Wis. 2d at 747.

### Motion to Strike and for Sanctions

¶ 32. Gende filed an affidavit in opposition to Cannon & Dunphy's motion to intervene. Cannon & Dunphy responded with a motion to strike the affidavit

which it termed a "rambling diatribe and personal attack on Cannon & Dunphy," and for sanctions. In its order denying the motion to intervene, the circuit court also denied Cannon & Dunphy's motions to strike and for sanctions. Cannon & Dunphy purports to appeal the denial of that motion.

¶ 33. We say "purports to appeal" because Cannon & Dunphy's only references to it in its brief-in-chief appear as an outline of the issue in the "Statement of Issues and Standard of Review" and in a brief footnote to the timeliness portion of its argument. The footnote states in its entirety:

> The circuit also denied, without considering, Cannon & Dunphy, S.C.'s motion to strike the April 13, 2005 Affidavit of James J. Gende and for sanctions. In conjunction with its request that the order denying Cannon & Dunphy, S.C.'s request to intervene be reversed, the firm requests that the order regarding its motion to strike Attorney Gende's affidavit also be reversed and remanded for further proceedings.

¶ 34. The argument section of the brief-in-chief is devoid of discussion on this aspect of the appeal. The reply brief addresses it, but that affords Olivarez no opportunity to reply. We deem this issue inadequately briefed and therefore decline to review it. *See Roehl v. American Family Mut. Ins. Co.*, 222 Wis. 2d 136, 149, 585 N.W.2d 893 (Ct. App. 1998).

## CONCLUSION

¶ 35. The erroneous exercise of discretion standard of review of circuit court decisions is difficult to overcome in the best of cases. *See Nelson v. Machut*, 138 Wis. 2d 301, 309, 405 N.W.2d 776 (Ct. App. 1987). We

agree that the facts here could have supported a different exercise of discretion. Our inquiry, however, is whether discretion was exercised, not whether it could have been exercised differently. Even were the motion timely, we hold that its denial did not impair or impede Cannon & Dunphy's pursuit of any interest it may have in the underlying action.

*By the Court.*—Order affirmed.