In the Matter of the Grandparental Visitation of
Edward Opichka and Alexander Opichka:

Michael B. Rick and Mary L. Rick,
Petitioners-Respondents,

v.

Jeffrey L. Opichka, Respondent-Appellant.†

Court of Appeals

*No. 2009AP40. Submitted on briefs August 27, 2009.
—Decided January 13, 2009.*

2010 WI App 23

(Also reported in 780 N.W.2d 159.)

† Petition to Review denied 3/16/10.

511

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Wendy S. Paul* of Racine.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Judith M. Hartig-Osanka* of Racine.

A nonparty brief was filed by *Morganne L. MacDonald*, guardian ad litem for Edward and Alexander Opichka.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. BROWN, C.J. This is a grandparent visitation case where the family court ordered that the parents of a deceased mother would have overnight visitation during the second weekend of each month, plus one week during the summer. The father, Jeffrey Opichka, objects to this order on grounds that it allows more than just grandparent visitation; it is rather like an order often seen in divorce judgments whereby primary physical placement is awarded one parent with expansive, structured overnights and summer vacations awarded to the other parent. Opichka claims that this kind of order gives the grandparents an interest in raising the children that goes well beyond the intent of the grandparent visitation statute, which he contends is merely to allow a modicum of continuity between the deceased parent's family and the children. Additionally, Opichka claims that the grandparent visitation statute violates equal protection because it treats similarly situated parents differently by allowing the State to intervene when one parent is deceased, but not when

514

both parents are alive and in an intact family arrangement. We conclude that grandparent visitation is not a question of the quantity of the visitation, but whether the best interests of the children would be served thereby, fully in keeping with the commands of the statute and the law. But still, we must reverse and remand a portion of the order for clarification purposes which we will later explain. We further hold that a family with a deceased parent is not similarly situated to an intact family and reject the equal protection arguments. We also address other issues.

¶ 2. Jennifer and Jeffrey Opichka married and had two children, Edward and Alexander. Edward was born in 2002 and Alexander was born in 2003. While Jennifer was alive, Jennifer's parents, Michael and Mary Rick, cared for the boys generally at least one weekend a month along with some weeknights. In 2006, Jennifer was diagnosed with cancer and died a few months later. And soon after her death Jeffrey allowed the Ricks to visit the boys less and less. In 2007, the Ricks petitioned for grandparent visitation with Edward and Alexander. Jeffrey objected. After a bench trial, the family court granted the Ricks visitation during the second weekend of each month from Friday at 5:00 p.m. till Sunday at 7:00 p.m., the last Wednesday of each month from 5:00 p.m. till 7:00 p.m., and one week each summer. Jeffrey appeals. Further facts will be related during the course of this opinion.

## DISCUSSION

¶ 3. The statute allowing courts to order grandparent visitation is WIS. STAT. § 54.56(2) (2007–08).[1] This section states:

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

If one or both parents of a minor are deceased and the minor is in the custody of the surviving parent or any other person, a grandparent or stepparent of the minor may petition for visitation privileges with respect to the minor, whether or not the person with custody is married . . . . [T]he court may grant reasonable visitation privileges to the grandparent or stepparent if the surviving parent or other person who has custody of the minor has notice of the hearing and if the court determines that visitation is in the best interest of the minor.

¶ 4. In visitation cases under WIS. STAT. § 54.56, the court must give a fit parent's wishes regarding visitation special weight. *Martin L. v. Julie R.L.*, 2007 WI App 37, ¶¶ 11–13, 299 Wis. 2d 768, 731 N.W.2d 288. This is accomplished through a rebuttable presumption that fit parents act in the best interests of their children. *Roger D.H. v. Virginia O.*, 2002 WI App 35, ¶ 19, 250 Wis. 2d 747, 641 N.W.2d 440. The family court, however, is still required to independently assess what the best interests of the children are. *Id.* The assessment of children's best interests depends on firsthand observation and experience with the persons involved and, therefore, it is within the family court's discretion. *F.R. v. T.B.*, 225 Wis. 2d 628, 637, 593 N.W.2d 840 (Ct. App. 1999). We will affirm a family court's discretionary decision so long as it examines the relevant facts, applies the proper legal standard, and uses a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *Id.*

### Preliminary Issues

¶ 5. We will address what we consider to be the less substantial issues first. Jeffrey asserts that the facts in this case are just like those in *Troxel v.*

516

*Granville*, 530 U.S. 57 (2000), where the United States Supreme Court denied visitation. *See id.* at 72, 75. He contends that the reason the family court in this case ruled for the grandparents, while the *Troxel* court ruled in favor of the parent, is that the family court did not follow the law set forth in *Troxel*. The Court there announced that the right of natural parents to make decisions for their children was such a fundamental part of the Constitution that the Court fashioned a presumption in favor of the natural parents. *Id.* at 67–70. The presumption is that any decision made by the living parent about how much outside visitation to allow is, by the very nature of the parent's natural interest in the child's welfare, going to be in the child's best interests. *Id.* at 67. Jeffrey posits that the family court ignored this presumption and created its own erroneous legal standard called "meaningful visitation." He likens the family court's rationale as ruling that, since the grandparents had a meaningful relationship with the boys before the mother's death, they were entitled to meaningful visitation after, regardless of how he viewed the matter.

¶ 6. Reading the record, however, we see that the family court did indeed start its bench decision by presuming that Jeffrey's handling of outside visitation was made with his children's best interests in mind. The family court then remarked that, with the presumption in place, its next duty was to weigh the best interests of the child factors to decide if the Ricks had met the heavy burden of rebutting that presumption. Thus, the family court used the appropriate legal standard. Therefore, this is not a *Troxel* case where the trial court failed to apply a presumption in favor of the natural parent. *See id.*

¶ 7. Then, in deciding whether the presumption had been rebutted, the family court stated:

> [It] is not easy to articulate Jeffrey's decision. Jeffrey has been equivocal in his stated visitation terms. Further his actions belie his stated visitation terms . . . . Jeffrey would not commit to a fixed schedule. The guardian ad litem believed Jeffrey's decision was that the Ricks could have supervised placement in Jeffrey's home with another adult, generally Jeffrey's sister present[,] . . . when convenient to Jeffrey.

¶ 8. This is where the family court used the word "meaningful," among others, to describe the visitation between the boys and the Ricks before Jennifer's death:

> The evidence established that Jeffrey and Jennifer and the boys had a significant and regularly occurring relationship with [the] Ricks. They participated in extended family gatherings, family celebrations and holidays on a regular basis. For example, in 2005 the boys spent at least one weekend per month sometimes more with the Ricks and these included overnights. Jennifer would occasionally have the Ricks watch the boys during the week. This regularly recurring relationship continued into 2006. In April 2006 Jennifer received her diagnosis. Tragically death followed quickly. Both the paternal and maternal grandparents were heavily involved in caring for the boys and for Jennifer until her passing. Following Jennifer's death Jeffrey remained on leave from work, but had the daily assistance of his mother and Mary Rick in feeding and clothing the boys, for example, getting Edward off to school. And the daily care of Alexander. Jeffrey returned to work at the beginning of November of '06. He decided to have his sister and brother-in-law move into the house to help with managing the house and raising the boys.
>
> . . . .

> Before [Jennifer's] death the boys had a meaningful intimate relationship with the Ricks . . . . The Ricks were present in the boys' lives in a meaningful sense.

The record reflects that the family court used the word "meaningful" as a descriptive adjective while relating the grandparents' past relationship with the boys; it was not crafting some legal standard to depart from the presumption. Jeffrey's assertion fails.

¶ 9. The remainder of the preliminary issues, except for one issue already settled by our courts, which we will explain in a footnote,[2] center on Jeffrey's argument that the family court erroneously exercised its discretion in finding that the presumption had been rebutted and that the family court inappropriately colored the testimony to do so. This is what the family court said:

> [U]p to the filing of the petition the Ricks attempted to communicate with Jeffrey about regularly scheduled visits. Jeffrey did not respond. No action was taken by Jeffrey to facilitate or encourage a relationship with [the] Ricks.

---

[2] Jeffrey also argues that WIS. STAT. § 54.56 violates the due process clause. But we already decided that the grandparent visitation statute does not violate the due process clause. In *Roger D.H. v. Virginia O.*, 2002 WI App 35, ¶¶ 18–20, 250 Wis. 2d 747, 641 N.W.2d 440, we found a nonparent visitation statute constitutional under *Troxel v. Granville*, 530 U.S. 57 (2000), because courts apply a presumption that a fit parent's decision regarding grandparent visitation is in the best interests of the children, even when the statute is silent on the subject. And in *Martin L. v. Julie R.L.*, 2007 WI App 37, ¶¶ 11–13, 299 Wis. 2d 768, 731 N.W.2d 288, we extended this same legal standard to § 54.56.

. . . .

By his actions and through his testimony Jeffrey demonstrated that he wants and needs to control and limit the relationship between the boys and the Ricks. He is anxious about sharing any time with the Ricks . . . . He has demonstrated distrust of the Ricks. He seems to be angry and resentful toward the Ricks. He seems to have transferred some blame for Jennifer's death onto the Ricks. Even if Jeffrey is given the benefit of the judgment that he is still working through the grieving process his treatment of the Ricks is puzzling . . . . This Court believes that Jeffrey's emotions dominate his decisions to not allow unsupervised over night visits with the Ricks . . . .

Further this Court notes the recommendation of the guardian ad litem in support of the petition to grant an order for grandparent visitation. The guardian ad litem has also expressed the wishes of the children in clear and unambiguous terms. Both boys want regularly occurring contact with the Ricks.

¶ 10. Based on our review of the record, we cannot say that the family court's determination was an erroneous exercise of discretion. The decision is an extensive, well-reasoned oral decision based on pertinent facts of record.[3] Though Jeffrey paints a different picture with the facts, the inferences drawn from the

---

[3] The facts of record included the following: A significant history of a regularly occurring relationship between the Ricks and the boys; continuing contact after Jennifer's death; a haircut incident where, as a result, Jeffrey forbade visitation until further notice; Jeffrey's refusal to communicate with the Ricks by phone, e-mail, or in person after that time; Jeffrey's objection to Mrs. Rick volunteering at Edward's school even though the school said such volunteering was properly conducted; Jeffrey's allowance of two short, unsupervised visits with the Ricks during the eight months that this action was

facts and the discretionary determinations based thereon are for the family court to make. We defer to these determinations. We uphold the trial court's finding that the Ricks' overcame the presumption.

*Visitation versus Physical Placement*

■

¶ 11. Now we get to the first of what we consider to be the two more substantial issues on appeal. Jeffrey argues that the award of overnights and a week during the summer is contrary to law because it is akin to a physical placement award found in divorce cases, thus putting the grandparents on equal footing with a divorced parent who does not have primary placement of the children. Even if his argument fails on that score, Jeffrey also contends that the order granted too much parental authority to the grandparents because the family court allegedly gave the grandparents "the responsibility of making the decisions in caring for the children."

¶ 12. Jeffrey takes the wrong road from the start by thinking that there is a difference between the quantity of "physical placement" as that term is used in Wis. Stat. § 767.001(5) and the quantity of "visitation" as that word is used in the grandparent visitation statute, Wis. Stat. § 54.56. There is no difference. Neither statute discusses quantity. Rather, physical placement and visitation are both situations where children go out of the custodial home, away from the parent with whom the children reside. Section 767.001(5) defines "[p]hysical placement" as:

---

pending before the family court; Jeffrey's failure to propose any visitation schedule in his parenting plan; evidence of anger, negative emotions toward the Ricks and control issues; and the wishes of the two boys.

[T]he condition under which a party has the right to have a child physically placed with that party and has the right and responsibility to make, during that placement, routine daily decisions regarding the child's care, consistent with major decisions made by a person having legal custody.

In *Lubinski v. Lubinski (O'Rourke)*, 2008 WI App 151, ¶ 9, 314 Wis. 2d 395, 761 N.W.2d 676, we looked to the dictionary definition of the word "visitation" to conclude that it meant "to go or come to see" or "to stay with as a guest." (Citation omitted.)

¶ 13. We believe that when children visit their grandparents and stay with them as a guest, the grandparents have the responsibility to make routine daily decisions regarding the child's care but may not make any decisions inconsistent with the major decisions made by a person having legal custody. The same is true of a parent who does not have joint legal custody, but does have a right to physical placement. In both instances, the same rules apply: routine daily decisions may be made, but nothing greater. Examples of these minor matters are what and when to eat, what clothes to wear and when to go to bed. *See In re Wesley J.K.*, 445 A.2d 1243, 1247 n.8 (Pa. Super. Ct. 1982). Therefore, the amount of time spent on the visit, whether for a few hours or an overnight is still a visit. The proper amount of that time is a decision made by the family court in the best interests of the children. In sum the quantity of time ordered does not depend on whether it is a visitation order or a physical placement order.

¶ 14. This is not to say that visitation and physical placement are *exactly* the same thing. They are not. As our statutory history indicates, whenever a court orders sole or joint legal custody to parents, the court is *required* to allocate periods of physical placement be-

tween parents *unless* it finds that such allocation is not in the best interest of the child. 1987 Wis. Act 355, PROVISIONS OF THE BILL. In other words, the presumption is that the spouse without primary placement shall have periods of physical placement. On the other hand, as we have already discussed, the grandparents are afforded no such presumption. In fact, the presumption is the opposite—grandparents get what the natural parent gives them unless they can show that the children's best interests is for the court to order otherwise. So, qualitatively, the two concepts are different. But as to the quantitative amount of placement and what that placement consists of, they are not different.

¶ 15. We also note that this is not the first time an appellate court in Wisconsin has dealt with a visitation order expansive enough to include overnights. In *F.R.*, we reviewed an order for grandparent visitation that included weekday and weekend overnights, vacation time, and essentially any other time when the child was not in school, in an organized activity, or with his father. *F.R.*, 225 Wis. 2d at 635. We concluded that, while the visitation award might be expansive, it was not unreasonable because of the longstanding and significant grandparent-grandchild relationship. *Id.* at 646.

¶ 16. Therefore, Jeffrey's view misses the mark when he contends that such things as overnights and vacation weeks and weekends that comprise a more expansive visitation order are not allowed by statute because a court can make such orders only in the context of a physical placement order. And, we must affirm a discretionary decision "unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion." *Olivarez v. Unitrin Prop. & Cas. Ins. Co.*, 2006 WI App. 189, ¶ 16, 296 Wis. 2d 337, 723 N.W.2d 131 (citation

omitted). Here, the family court's expansive order was not an erroneous exercise of discretion.

¶ 17. Jeffrey asserts that, even if the family court did not err in creating the expansive visitation order, it nonetheless erred by delegating major care decisions to the grandparents. We cannot say that Jeffrey is right or wrong in this regard. Looking at the record, the family court explained that "the grandparents will be making minute by minute decisions in caring for the children." This, standing alone, suggests to us that the family court was merely explaining how the grandparents could make routine daily decisions regarding the boy's care. On the other hand, the family court also said that the grandparents could take the children wherever they wanted, even across state lines so long as they notified Jeffrey. We are concerned that this comment may allow the grandparents to make a decision that goes beyond "routine daily decisions." We remand to the family court to clarify whether the grandparents have authority to make only the routine daily decisions and, if so, what those routine daily decisions may be.

### Equal Protection Claim

¶ 18. The remaining issue is Jeffrey's constitutional claim. Jeffrey contends that WIS. STAT. § 54.56 violates the equal protection clause in that it unfairly treats a class of parents known as parents with a deceased spouse differently from a class of parents known as parents in an "intact" family. This alleged treatment permits the State to interfere with visitation of children, and thus parents' fundamental right, from surviving parents but not from parents of "intact" families. The Ricks disagree that this treatment is

unconstitutional, but acknowledge that parents have a fundamental right to the care and custody of their children. *See Barstad v. Frazier*, 118 Wis. 2d 549, 556–57, 348 N.W.2d 479 (1984).

¶ 19. We review the constitutionality of a statute without any deference to the lower court. *State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989). And we will uphold a statute if there is any reasonable basis for the exercise of the power by the legislature. *Id.* Indeed, we must indulge every presumption to sustain the law if at all possible. *Id.* "[W]herever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality." *Id.* But we do apply a strict scrutiny analysis if a statute impinges on the exercise of a fundamental right. *Aicher v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶ 56, 237 Wis. 2d 99, 613 N.W.2d 849. Strict scrutiny requires that the statute be closely tailored to effectuate only sufficiently important state interests. *See Zablocki v. Redhail*, 434 U.S. 374, 388 (1978).

¶ 20. The party bringing the constitutional challenge bears the burden of proving that the statute is unconstitutional beyond a reasonable doubt. *Treiber v. Knoll*, 135 Wis. 2d 58, 64, 398 N.W.2d 756 (1987). Since the equal protection clause guarantees similarly situated individuals similar treatment, *id.* at 68, Jeffrey must show that the statute treats similarly situated individuals differently, *see Aicher*, 237 Wis. 2d 99, ¶ 56.

¶ 21. Jeffrey contends that surviving parents are situated similarly to parents from "intact" families because both classes of parents have the same fundamental liberty interest in the care and custody of their

children. But as we stated before, Jeffrey's fundamental liberty interest is undisputed.

¶ 22. We agree with the Ricks that these two classes of parents are different: a widowed parent has suffered the loss of his or her spouse, and therefore, the surviving parent's family, after the loss of a spouse, is no longer a traditional intact family. The death of a parent is the triggering event that creates a compelling state interest to protect a child's best interests. *See Holtzman v. Knott*, 193 Wis. 2d 649, 658, 533 N.W.2d 419 (1995). And we conclude that this is what grandparent visitation addresses. Visitation allows grandparents, who have previously had a meaningful relationship with the child, to contribute to the child's well-being by providing a sense of continuity. That is why court-ordered visitation focuses on the best interests of the child, which may include visitation when the family functions as an extended family, with grandparents who have had a significant, continuing and predictable relationship with the child before the parent's death. Further, the best interests of the child standard with a rebuttable presumption in favor of the parent's decision regarding visitation ensures that the visitation orders are closely tailored to achieve the purpose of continuity in a child's life. There is no doubt that these circumstances make it reasonable for the State to exercise its power. We thus conclude that WIS. STAT. § 54.56 is constitutional and does not violate the equal protection clause.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

¶ 23. SNYDER, J. (*dissenting*). This is a grandparent visitation case. The primary issue on appeal is not whether the circuit court appropriately preserved the

"meaningful" relationship between the children and the grandparents; rather it is whether the court exceeded its statutory authority to grant visitation by crafting the equivalent of a physical placement order that included parent-like decision-making power. Under WIS. STAT. § 54.56(2), a circuit court has the authority to "grant reasonable visitation privileges" to grandparents. Because the statute expressly authorizes reasonable visitation, but not physical placement, I dissent.

¶ 24. The majority demonstrates the tension that exists between the concepts of "visitation" and "physical placement." Without citation to any authoritative source, the majority makes the following conclusions, "[t]here is no difference" between visitation and physical placement when it comes to the quantity of time that the children spend with a grandparent. Majority op., ¶ 12. The majority then concedes that it cannot say that "visitation and physical placement are *exactly* the same thing," and that "qualitatively, the two concepts are different." Majority op., ¶ 14. But, claims the majority, "as to the quantitative amount of placement and what that placement consists of, they are not different." Majority op., ¶ 14.

¶ 25. Here, the circuit court ordered the father to allow his two sons to stay with their maternal grandparents for the second weekend of each month, the last Wednesday of each month, and one week each summer. Having removed the children from their only surviving parent's home, the circuit court then granted the grandparents the "responsibility of making the decisions in caring for the children," and the right to take the children across state lines after notifying the father. Having determined that the quantity of time spent with the grandparents was not determinative, the majority

then remands for clarification of the level of authority and decision making power the court intended to provide the grandparents.

¶ 26. I cannot join in the majority's conclusion because the statute and the case law do not support it. The difference between "visitation" and "physical placement" has been addressed extensively in a case cited by the majority. In *Lubinski v. Lubinski*, 2008 WI App 151, 314 Wis. 2d 395, 761 N.W.2d 676, a stepmother sought an injunction to enforce a placement schedule of her husband's minor son while the husband was deployed with the military. *Id.*, ¶ 3. The family court granted the injunction. *Id.*, ¶ 4. We reversed, holding that "physical placement bestows rights associated with legal custody, and [the stepmother] has no claim to physical placement or legal custody in this case." *Id.*, ¶ 6. The *Lubinski* court began its analysis with a discussion of " 'physical placement' versus 'visitation' under the statutes." *Id.*, ¶ 7.

¶ 27. The *Lubinski* court first tackled the concepts in the context of divorce proceedings under the auspices of WIS. STAT. ch. 767, and concluded that, "while physical placement encompasses the act of having a child physically present with the parent, it also grants that parent rights consistent with legal custody." *Id.*, ¶ 8. The court then went on to explain the use of the terms in non-parent circumstances:

> On the other hand, non-parents may petition for reasonable visitation rights (*as opposed to legal custody or physical placement*) with children who are in the custody of fit parents. While the statutes do not define "visitation," the dictionary defines visitation as "[a]n act of visiting . . . :VISIT," and "visit" is defined as "[t]o go or come to see" or "[t]o stay with as a guest." *Visitation, then, does not incorporate the rights associated with*

528

*legal custody or physical placement.* Instead, it allows certain people who have established parent-child relationships with children to maintain contact with those children following actions affecting the family unit, when such contact is in the best interest of the child.

*Id.*, ¶ 9 (citations omitted) (emphases added).

¶ 28. The closest analogy in Wisconsin case law comes from *F.R. v. T.B.*, 225 Wis. 2d 628, 593 N.W.2d 840 (Ct. App. 1999). In *F.R.*, the circuit court ordered frequent visitation with the grandparents, including weekend overnight visits, vacation time, and "during any period of time when [the child] was not in school, in an organized activity, or with his father." *Id.* at 635. There, we concluded that the visitation order was "expansive," and although "the trial court may have approached the limits of its discretionary authority . . . it did not exceed them." *Id.* at 646, 648. The majority draws on this language for support of its conclusion. However, the analogy becomes less perfect as the details of the order are examined. A close look at *F.R.* discloses that a significant portion of the time the child would be with the grandparent occurred when the father was at work. *Id.* at 647. Thus, the visitation order did not substantially interfere with the parent's time with his son; rather, it "pre-selected" the grandparent as the child's afterschool caregiver. *Id.* Also, the father retained the right to determine what afterschool activities his son would join. *Id.* And further, the father had the ability to "elect to be with his son" during the week if he was off work. *Id.* at 647 n.5. In other words, much of the "expansive" visitation order allowed the grandparent to be with the child at times when the child would otherwise be with a third-party caregiver. The order also retained decision-making authority in the parent,

and incorporated flexibility to allow the parent to be with his son when his work schedule changed. *Id.* at 647.

¶ 29. WISCONSIN STAT. § 54.56(2) allows grandparents to petition for reasonable visitation rights. *Lubinski* distinguishes visitation rights from custody or physical placement. *F.R.* teaches that visitation must not unreasonably interfere with a parent's ability to care for and spend time with his or her child.

¶ 30. Although the majority embraces a qualitative difference between visitation and physical placement, it rejects any distinction in quantity of time spent outside the custodial home. That is where we part ways. The quality and quantity of time afforded to the Ricks by the circuit court coalesce into something indistinguishable from physical placement. A visitation order that mimics a physical placement order cannot be condoned under the statute. The court's order grants extensive physical placement and control of the children away from the custodial oversight of the father. Thus, the court exceeded its statutory authority to grant "reasonable visitation" under WIS. STAT. § 54.56(2).