IN the INTEREST OF NICHOLAS L., Caleb L. and Jared L., children under the age of 18:

MARTIN L. and Marlene L.,
Petitioners-Respondents,

v.

JULIE R.L., Respondent-Appellant.

Court of Appeals

*No. 2006AP199. Submitted on briefs November 16, 2006.
—Decided January 31, 2007.*

2007 WI App 37

(Also reported in 731 N.W.2d 288.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Thomas M. Bartell, Jr.,* and *Michael A. Baird* of *Stupar, Schuster & Cooper, S.C.,* Milwaukee.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Christopher D. Walther* of *Walther Law Office, S.C.,* Milwaukee.

A guardian ad litem brief was filed by *Michael J. Finn* of *Law Office of Michael Finn,* Hartland.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Julie R. L. appeals an order granting Martin L. and Marlene L. unsupervised visitation with her sons Caleb L. and Jared L. pursuant to the grandparent visitation statute and an order denying her motion for reconsideration.[1] Julie maintains that the trial court applied the incorrect standard in assessing Martin's and Marlene's petitions for visitation. We hold the trial court properly determined that the rebuttable presumption that a fit parent acts in the best interests of his or her own children is the legal means of giving the parent's grandparent visitation decision the "special weight" the United States Supreme Court demanded in *Troxel v. Granville,* 530 U.S. 57 (2000). We affirm.

### Facts

¶ 2. Julie and Kevin A. L. married and had three children: Nicholas, Caleb and Jared. Kevin and Julie divorced in March 2004. Following the divorce, all three

---

[1] The trial court denied Martin's and Marlene's petition for grandparent visitation with Nicholas L. This appeal concerns the trial court's decisions regarding Martin's and Marlene's petitions for visitation with Caleb and Jared.

children saw their grandparents. Kevin had primary physical placement of Nicholas and they lived with Martin and Marlene. Although Julie had primary physical placement of Caleb and Jared, Martin and Marlene would see their grandsons at least a couple of times per week during Kevin's visitation. In January 2005, Kevin died in a snowmobile accident.

¶ 3. Following Kevin's death, Martin and Marlene filed petitions for visitation with Nicholas, Caleb and Jared. Martin and Marlene sought unsupervised visitation, two full weekend days per month and time over the holidays with the boys. Julie determined that she would permit only supervised visitation in her home. After a bench trial, the court issued an oral ruling. The court began by articulating its understanding of the proper standard to be applied when considering petitions for grandparent visitation:

> In order for Wisconsin's grandparent visitation statute to be constitutional . . . the Court has to give special weight, that is one of the terms, special weight to the mother's, Julie's, position or view about the grandparent visitation requests. Or another way to put it, one is to presume that Julie's views are in the children's best interests. That is, however, a rebuttable presumption.
>
> . . . .
>
> Now Julie['s] view as to what is best for her children is that . . . Martin and Marlene would have contact with her children only in her, Julie's home, under her supervision. We didn't get into how often or for how long and under what circumstances. So we start off with a rebuttable presumption that petition for grandparent visitation would be limited to that. And with that starting point the Court then reviews the evidence to determine under the best interests standard whether that presumption has been rebutted, and whether the Court should order anything more or different.

The court then determined that Martin and Marlene had rebutted the presumption as to Caleb and Jared, but not as to Nicholas. The court ordered two initial supervised visits with Caleb and Jared of three hours each to occur at Julie's home. After that, the court awarded Martin and Marlene unsupervised visitation with Caleb and Jared one Sunday afternoon a month from noon until six in the evening and then set forth a holiday and summer unsupervised visitation schedule. The court forbade Martin and Marlene from disparaging Julie in front of Caleb and Jared. Julie filed a motion for reconsideration, arguing that the trial court misapplied the grandparent visitation statute and the standards protecting Julie's constitutional rights. The court denied the motion.

### *Standard of Review*

¶ 4. The decision whether to grant or deny visitation is within the circuit court's discretion. *Roger D.H. v. Virginia O.*, 2002 WI App 35, ¶ 9, 250 Wis. 2d 747, 641 N.W.2d 440. We will affirm a circuit court's discretionary determination so long as it examines the relevant facts, applies the proper legal standard, and uses a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *F.R. v. T.B.*, 225 Wis. 2d 628, 637, 593 N.W.2d 840 (Ct. App. 1999). When a party contends that the circuit court erroneously exercised its discretion because it applied an incorrect legal standard, we review that issue de novo. *Id.* The interpretation and application of statutes and case law to the facts of a particular case present questions of law which appellate courts decide de novo. *See Welin v. American Family Mut. Ins. Co.*, 2006 WI 81, ¶ 16, 292 Wis. 2d 73, 717 N.W.2d 690.

### *Discussion*

¶ 5. Julie's thesis is that under *Troxel* and *Roger D.H.*, a court must satisfy two prerequisites before it can grant a petition for grandparent visitation: (1) the proponent of the visitation must rebut the presumption that the parent's decision regarding the appropriateness of visitation is in the child's best interest and (2) the court must give "special weight" to the parent's decision. Julie asserts that the trial court erred by inappropriately collapsing the rebuttable presumption and the "special weight" requirements into a single element. We disagree; our review of *Troxel* and *Roger D.H.* demonstrates that the rebuttable presumption and special weight requirements are interrelated.[2]

¶ 6. WISCONSIN STAT. § 880.155(2) (2003–04)[3], which is now WIS. STAT. § 54.56, authorizes the trial court to grant visitation privileges to a grandparent:

> If one or both parents of a minor child are deceased and the child is in the custody of the surviving parent or any other person, a grandparent or stepparent of the child may petition for visitation privileges with respect to the child, whether or not the person with custody is married . . . . [T]he court may grant reasonable visitation

---

[2] Julie also argues that the evidence does not support the trial court's ruling under her version of the proper legal standard. Because we reject Julie's standard, we need not consider this argument.

[3] The legislature has recently renumbered and amended the two statutes referenced in this decision, WIS. STAT. §§ 767.24 and 880.155. *See* 2005 Wis. Act 387 § 373; 2005 Wis. Act 443 §§ 94–99. These changes, however, do not have an impact on our analysis.

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

privileges to the grandparent or stepparent if the surviving parent or other person who has custody of the child has notice of the hearing and if the court determines that visitation is in the best interest of the child.

*See also F.R*, 225 Wis. 2d at 636–37. WISCONSIN STAT. § 767.24(5), which is now WIS. STAT. § 767.41(5), sets out the appropriate standard for determining the "best interests of the child" for the grandparent visitation statutes. *See F.R.*, 225 Wis. 2d at 642.

¶ 7. In *Troxel*, 530 U.S. at 61–62, a Washington state trial court, pursuant to a broadly drawn state visitation statute, granted more visitation to the paternal grandparents than the mother of the children desired. The United States Supreme Court held that the trial court's application of that statute violated the mother's due process rights. *Id.* at 75.

¶ 8. In analyzing the case, the Court observed "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66. The Court criticized the state trial court for failing to articulate any special factors that might justify the State's interference with the mother's fundamental rights. *Id.* at 68. The Court emphasized that the grandparents did not allege that the mother was an unfit parent. *Id.* The Court recognized that a parent's fundamental right to make the decisions regarding the rearing of his or her children gave rise to "a presumption that fit parents act in the best interests of their children." *Id.* "Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68–69.

¶ 9. Applying these principles to the case before it, the Court wrote, "[t]he problem here is not that the Washington [trial court] intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests." *Id.* at 69. The Court faulted the trial court for "applying exactly the opposite presumption"—meaning, a presumption in favor of grandparent visitation. *Id.* The Court stated that this improper presumption failed to provide protection for the mother's fundamental constitutional rights. *Id.* at 69–70. According to the court, "if a fit parent's decision . . . becomes subject to judicial review, the court must accord at least some *special weight* to the parent's own determination." *Id.* at 70 (emphasis added). The Court then noted that the mother had not opposed visitation entirely, but rather had asked that the duration of any visitation be shorter than that requested by the grandparents. *Id.* at 72. The Court held that the trial court should have accorded weight to the mother's offer of meaningful visitation to the grandparents. *Id.*

¶ 10. In *Roger D.H.*, we considered *Troxel*'s teachings in the context of a WIS. STAT. § 767.245 grandparent visitation petition. *Roger D.H.*, 250 Wis. 2d 747, ¶¶ 18, 19. We gleaned two propositions from *Troxel*: (1) due process requires that courts apply a presumption that a fit parent's decision regarding nonparental visitation is in the best interest of the child and (2) a state court may read this requirement into a nonparental visitation statute, even when the statute is silent on the topic. *Roger D.H.*, 250 Wis. 2d 747, ¶ 18. Accordingly, we held that

> when applying WIS. STAT. § 767.245 (3), circuit courts must apply the presumption that a fit parent's decision regarding grandparent visitation is in the best interest

776

of the child. At the same time, we observe that this is only a presumption and the circuit court is still obligated to make its own assessment of the best interest of the child. What the Due Process Clause does not tolerate is a court giving no "special weight" to a fit parent's determination, but instead basing its decision on "mere disagreement" with the parent.

*Roger D.H.*, 250 Wis. 2d 747, ¶ 19 (citations omitted).[4]

¶ 11. *Troxel* and *Roger D.H.* teach that the due process clause does not allow the State to intervene in the child-rearing decision of a fit, custodial parent simply because a court believes there is a better decision. *See Anna S. v. Diana M.*, 2004 WI App 45, ¶ 16, 270 Wis. 2d 411, 678 N.W.2d 285. The due process clause, therefore, prevents a court from starting with a clean slate when assessing whether grandparent visitation is in the best interests of the child. Rather, within the best interests decisional framework, the court must afford a parent's decision "special weight." *See Troxel*, 530 U.S. at 68–70; *Roger D.H.*, 250 Wis. 2d 747, ¶ 19.

¶ 12. This "special weight" given to a parent's decision is not a separate element in the court's assessment as Julie argues. Pursuant to *Troxel* and *Roger D.H.*, the court accords special weight by applying a

---

[4] This appeal concerns WIS. STAT. § 880.155 and not WIS. STAT. § 767.245. However, both statutes address the trial court's authority to grant reasonable visitation to nonparents. *Roger D.H. v. Virginia O.*, 2002 WI App 35, ¶ 18, 250 Wis. 2d 747, 641 N.W.2d 440, holds that a court may read the rebuttable presumption afforded fit parents into a nonparental visitation statute, even where the statute is silent on the topic. Thus, *Troxel*'s presumption applies with equal force to § 880.155. *See Troxel v. Granville*, 530 U.S. 57 (2000).

rebuttable presumption that the fit "parent's decision regarding grandparent visitation is in the best interest of the child." *See Troxel*, 530 U.S. at 68–70; *Roger D.H.*, 250 Wis. 2d 747, ¶¶ 19, 21. In other words, as the grandparents aptly write, "the 'rebuttable presumption' is the legal means of giving the parent's decision 'special weight.'" Thus, the court is to tip the scales in the parent's favor by making that parent's offer of visitation the starting point for the analysis and presuming it is in the child's best interests. It is up to the party advocating for nonparental visitation to rebut the presumption by presenting evidence that the offer is not in the child's best interests. The court is then to make its own assessment of the best interests of the child. *See Roger D.H.*, 250 Wis. 2d 747, ¶ 19.

¶ 13. Applying these principles to the facts of this case, the starting point for the trial court's analysis should have been Julie's decision to permit supervised visitation with Martin and Marlene. Therefore, the trial court was required to presume that supervised visitation is in Caleb's and Jared's best interests and then to determine whether the evidence presented rebutted that presumption. A careful consideration of the trial court's oral ruling shows that this was its course of action.

¶ 14. The court explicitly used Julie's offer of supervised visitation as the starting point for its analysis. The court afforded this decision special weight by presuming that supervised visitation was in the best interests of the boys. The court determined that Martin and Marlene had rebutted this presumption as to Caleb and Jared. The court then carefully walked through the evidence presented and the other best interests of the child factors to show how the presumption had been rebutted.

¶ 15. The evidence supports the court's determination that Martin and Marlene had rebutted the presumption. The court noted that "the real issue" in the case concerned the balancing of "the evident and normal value of Caleb and Jared having a relationship with their father's family, against the concern about interference by Martin and Marlene with Julie's role as the sole parent." Although the court recognized that Julie was not completely unjustified in her distrust of Martin and Marlene, the court emphasized that Julie's extreme anger inappropriately dominated her decision to deny unsupervised visitation. The court stated:

> Julie's testimony that if she didn't get her way so-to-speak she intended to move out of state; and the clear inference was so she could avoid the court orders, she said she would not obey the court orders . . . . I'm certainly not going to overact to that, it hasn't happened yet.
>
> But it does suggest to me why it is appropriate to treat Julie's view of what is best for her children as something that is potentially rebutted because it is such an extreme position it seems to be driven as much by anger and frustration, as by a calm, cool consideration of what is best for Caleb and Jared. Put another way, the level of her angry position undermines the quality of her judgment.

As the guardian ad litem points out, "a decision motivated by anger, frustration or spite, whether justified or not, completely ignores the interests of the children." The trial court further highlighted the substantial relationship Caleb and Jared already had with Martin and Marlene and their uncles, aunt and cousins and the benefits that would flow from continuing that relation-

779

ship unsupervised. These findings are supported by the facts of record and we see no reason to disturb them.[5]

## *Conclusion*

¶ 16. In sum, the court applied the proper standard and its findings are supported by the evidence presented. While due process prevented the court from interfering with Julie's decision in favor of supervised visitation simply because it disagreed with it, it did not require the court to impose an irrebuttable presumption in Julie's favor. The court was well within its rights to make its own assessment of the situation and conclude that Martin and Marlene had presented evidence rebutting the presumption that Julie's offer of supervised visitation was in Caleb's and Jared's best interests. We affirm the orders.

*By the Court.*—Orders affirmed.

---

[5] Julie contends that the trial court failed to consider Caleb's and Jared's wishes when issuing its ruling, as required by WIS. STAT. §§ 767.24(5)(am)2. and 880.155(3). However, in its oral ruling, the trial court made express findings regarding the boys' wishes, stating that the boys were "conflicted" or "ambivalent" about visitation with their grandparents and, as a result, their wishes did not carry "particular weight" in its decision. The court's findings about the boys' attitudes are supported in the record. The social worker who interviewed the boys stated that they were "ambivalent about visiting their grandparents" because they did not want to see either their mother or their grandparents get hurt.