IN RE the PATERNITY OF E. M. B.:

Steve B. WOHLERS, Petitioner-Appellant,

v.

Shari L. BROUGHTON, Respondent,

Diane WHITE and Leo White,
Third Party-Intervenors-Respondents.

Court of Appeals

*No. 2009AP488. Submitted on briefs November 16, 2009.
—Decided August 4, 2011.*

2011 WI App 122

(Also reported in 805 N.W.2d 118.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Donald B. Bruns* of *Bruns Law Office*, Madison.

On behalf of the third party-intervenors-respondents, the cause was submitted on the brief of *Carol M. Gapen* of *The Law Center for Children & Families*, Madison.

Before Lundsten, P.J., Vergeront and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. This is a grandparent visitation case. Steve Wohlers, father of E.B., appeals a trial court order modifying a visitation schedule that granted more visitation to E.B.'s maternal grandparents, Leo and Diane White (the grandparents), than

Wohlers had proposed. The parties raise three main issues in this appeal: (1) whether the court erred in declining to require the grandparents to prove the existence of a "significant triggering event" under *Holtzman v. Knott*, 193 Wis. 2d 649, 533 N.W.2d 419 (1995), justifying state intervention in Wohlers' relationship with E.B; (2) whether the court failed to give "special weight" to Wohlers' proposed visitation schedule as required by *Troxel v. Granville*, 530 U.S. 57 (2000), in deciding Wohlers' motion to modify visitation; and (3) whether the trial court erred in limiting the scope of the issues to be tried to visitation only during the school year.

¶ 2. We conclude as follows: (1) the court did not err in declining to require the grandparents to prove a "significant triggering event" occurred because the grandparent visitation statute, WIS. STAT. § 767.43(3) (2009–10),[1] applies here and *Holtzman* does not apply to cases under that statute; (2) the court applied the correct legal standard to Wohlers' proposed visitation schedule as required by *Troxel*; and (3) the court erred by limiting the scope of Wohlers' motion to school- year visitation in light of the fact that Wohlers plainly requested review of non-school-year visitation as well. We therefore affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 3. E.B. was born to Shari Broughton in December 2001, who was then incarcerated. E.B.'s maternal grandparents, Leo and Diane White, assumed care of

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

E.B.[2] The grandparents were E.B.'s primary caregivers for approximately the first five years of E.B.'s life.

¶ 4. After becoming aware that he might be E.B.'s father, Steve Wohlers brought this action in April 2004 to establish his paternity. In July 2004, Wohlers was adjudicated the boy's father, and a temporary order was entered granting Wohlers periods of physical placement with E.B. In October 2004, the grandparents filed a motion to intervene for the purpose of obtaining a court order pursuant to Wis. Stat. § 767.245 (2003–04) (now § 767.43(3)) granting them visitation rights with E.B. Pursuant to a March 2005 stipulation, the parties agreed to work with Dr. Kenneth Waldron to transition E.B. to primary placement in Wohlers' home and to mitigate any harm to E.B. resulting from diminished time with the grandparents. Wohlers agreed to participate in counseling and parent education sessions with Marlin Kriss.

¶ 5. In January 2007, the parties entered into a stipulation approved by a circuit court order granting sole legal custody of E.B. to Wohlers and visitation to the grandparents. The stipulation established a schedule in which, for every two-week period, E.B. would live nine days with Wohlers and five days with the grandparents. It further stated that the parties had agreed to develop a new visitation schedule once E.B. started kindergarten in the fall of 2007.

¶ 6. In July 2007, Wohlers filed a motion to amend the January 2007 order "to eliminate or establish periods of visitation commencing with the start of

---

[2] Although Shari was a party in the underlying paternity action from which this grandparent visitation matter arose, she is not a participant in this appeal.

the 2007–2008 school year for E.B."[3] Shortly thereafter, Wohlers asked the court to delay action on his motion so that he could attempt to negotiate a revised visitation schedule with the Whites. In the meantime, the court referred the case to the Dane County Family Court Counseling Service for mediation. Efforts to reach a negotiated or mediated settlement were unsuccessful, and the court proceeded to take up Wohlers' July 2007 motion to amend the visitation order.

¶ 7. At a status conference, Wohlers requested a hearing pursuant to WIS. STAT. § 767.43(3m) to determine whether the grandparents had standing to assert their right to grandparent visitation. Wohlers contended that the grandparents lacked standing to assert a right to visitation because no "significant triggering event" justifying state intervention in the parental relationship had occurred under *Holtzman*.

¶ 8. The court ordered briefing on the standing issue, and issued a decision rejecting Wohlers' arguments. An issue arose concerning the scope of Wohlers' motion to modify visitation. The court, the GAL, and the grandparents construed Wohlers' motion as seeking modification of the school-year schedule only. Wohlers attempted to clarify that he intended to seek "a new order *starting in August, 2007,* dealing with all visitation issues." (Emphasis in original.) He reasserted this position in his trial brief and at the start of the trial. The court ruled that it would only hear evidence as to school-year visitation.

¶ 9. At trial, Wohlers submitted a plan outlining his proposed schedule for visitation during the school

---

[3] Wohlers' motion also sought to forbid the Whites from cutting E.B.'s hair or from exposing E.B. to the teachings or practices of the Whites' religious sect, the Jehovah's Witnesses. Neither of these matters is before us in this appeal.

year and for all other periods as well. In general terms, it provided the grandparents one weekend per month visitation, one mid-week evening visit per week upon Wohlers' approval, and one vacation of up to seven days per year. The proposed schedule also stated that all holidays would be spent with Wohlers, and that the grandparents could visit E.B. at other times with Wohlers' consent. By contrast, the joint recommendations of the Dane County Family Court Counseling Service and the guardian ad litem, which was favored by the grandparents, recommended every other weekend visitation during the school year.

¶ 10. The trial court gave an oral ruling at the end of the trial and issued written findings of fact, conclusions of law and an order. The court restated its view that "[t]he motion to modify the original Order addresses only a change in the school year schedule." The court ordered modification of the visitation schedule to provide the grandparents with visitation every other weekend during the school year, as recommended by the Dane County Family Counseling Service and guardian ad litem, and one mid-week after school visitation every week. Wohlers appeals.

## STANDARD OF REVIEW

¶ 11. We review a trial court's order regarding grandparent visitation for an erroneous exercise of discretion. *See Martin L. v. Julie R.L.*, 2007 WI App 37, ¶ 4, 299 Wis. 2d 768, 731 N.W.2d 288. We will affirm a trial court's discretionary determination so long as it examines the relevant facts, applies the proper legal standard, and uses a demonstrated rational process to reach a conclusion that a reasonable judge could reach.

*Id.* We review de novo a party's contention that the trial court applied the incorrect legal standard in making a discretionary determination. *Id.*

## DISCUSSION

¶ 12. Wohlers makes the following arguments on appeal: (1) the court erred by failing to require proof of a "significant triggering event" under *Holtzman* in deciding his motion to modify visitation; (2) the court erred by failing to give "special weight," as required by *Troxel*, to Wohlers' determination regarding E.B.'s best interests; and (3) the court erred by limiting the scope of the hearing to only school-year visitation. We address each argument in turn after providing the applicable legal standards.

A. Applicable Law

¶ 13. The parties agree that the special grandparent visitation provision, WIS. STAT. § 767.43(3), applies to this case.[4] The special grandparent visitation statute, and not the general grandparents and other "certain persons" provision contained in § 767.43(1), applies

_____

[4] We observe, however, that WIS. STAT. § 767.43(3) specifically addresses when a court may grant visitation in the first instance, and not, as here, when a court may modify an existing visitation order. *See generally* § 767.43(3). Neither § 767.43(3) nor any other part of § 767.43 specifically addresses motions to modify existing grandparent visitation orders. *See generally* § 767.43. The only part of § 767.43 addressing modification requires courts to modify visitation orders for persons convicted of homicide, unless the court determines visitation is in the child's best interest. Sec. 767.43(6). Nevertheless, the parties agree, and we conclude, that the statute applies to motions to modify existing grandparent visitation orders where the requirements of § 767.43(3)(a)–(c) are fulfilled.

114

when: (a) "[t]he child is a nonmarital child whose parents have not subsequently married each other," (b) "the paternity of the child has been determined . . . if the grandparent filing the petition is a parent of the child's father," and (c) "[t]he child has not been adopted." Sec. 767.43(2m) and (3)(a)-(c).

¶ 14. Under WIS. STAT. § 767.43(3), a "court may grant reasonable visitation rights" to a grandparent if the parents have notice of the hearing and the court determines all of the following:

> (d) The grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so by a parent who has legal custody of the child.

> (e) The grandparent is not likely to act in a manner that is contrary to decisions that are made by a parent who has legal custody of the child and that are related to the child's physical, emotional, educational or spiritual welfare.

> (f) The visitation is in the best interest of the child.

Sec. 767.43(3).[5] A grandparent's request for visitation under this provision may be brought as a separate

---

[5] Wisconsin Stat. § 767.43(3) provides in full:

(3) SPECIAL GRANDPARENT VISITATION PROVISION. The court may grant reasonable visitation rights, with respect to a child, to a grandparent of the child if the child's parents have notice of the hearing and the court determines all of the following:

· (a) The child is a nonmarital child whose parents have not subsequently married each other.

(b) Except as provided in sub. (4), the paternity of the child has been determined under the laws of this state or another jurisdiction if the grandparent filing the petition is a parent of the child's father.

(c) The child has not been adopted.

action or may be filed in an underlying family action under ch. 767 that affects the child. Sec. 767.43(3c).[6] A court is required to hold a pretrial hearing on a grandparent's visitation petition at which the parties may present evidence, after which the court must advise the parties as to the probability that visitation rights would be granted to the grandparent at a trial. Sec. 767.43(3m).

█

¶ 15. A parent has a fundamental right to make decisions concerning the care, custody, and control of his or her children, and therefore a trial court must give "at least some special weight" to a fit parent's determination of the child's best interest when addressing grandparent visitation. *Troxel*, 530 U.S. at 65, 70. "This is accomplished through [application of] a rebuttable presumption that fit parents act in the best interests of their children." *Rick v. Opichka*, 2010 WI App 23, ¶ 4, 323 Wis. 2d 510, 780 N.W.2d 159, *review denied,* 2010 WI 110, 327 Wis. 2d 463, 787 N.W.2d 845.

---

(d) The grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so by a parent who has legal custody of the child.

(e) The grandparent is not likely to act in a manner that is contrary to decisions that are made by a parent who has legal custody of the child and that are related to the child's physical, emotional, educational or spiritual welfare.

(f) The visitation is in the best interest of the child.

[6] Wisconsin Stat. § 767.43(3c) provides as follows: "A grandparent requesting visitation under sub. (3) may file a petition to commence an independent action for visitation under this chapter or may file a petition for visitation in an underlying action affecting the family under this chapter that affects the child."

B. Applicability of *Holtzman* to Cases under Wis. Stat. § 767.43(3)

¶ 16. Wohlers argues that the court erred by not requiring the grandparents to prove the existence of a "significant triggering event" as required by *Holtzman* in addressing his motion to modify the placement order. The grandparents argue that, by agreeing to grandparent visitation in the January 2007 stipulation and order, Wohlers forfeited his right to now raise this issue. In the alternative, they argue that they met the test for standing under *Holtzman* and Wis. Stat. § 767.43 when they moved to intervene in Wohlers' paternity case. Under the analysis set forth below, we conclude that the trial court did not err because *Holtzman* does not apply to cases under the special grandparent visitation statute, § 767.43(3).

¶ 17. In *Holtzman*, the supreme court concluded that a circuit court may exercise its equitable powers to hear and grant visitation to a non-parent in circumstances where the ch. 767 non-parent visitation statute in effect at that time, Wis. Stat. § 767.245 (1991–92), did not apply.[7] *Holtzman*, 193 Wis. 2d at 689. The person petitioning for visitation was a woman who had been in a relationship with the biological mother of the

---

[7] Wisconsin Stat. § 767.245 (1991–92) provided:

(1) Upon petition by a grandparent, great[-]grandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child.

(2) Whenever possible, in making a determination under sub. (1), the court shall consider the wishes of the child.

child. *Id.* at 659–60. The court held that § 767.245 (1991–92) did not apply because the history of the third-party visitation statutes in ch. 767 and cases interpreting them showed that the legislature had the dissolution of marriage in mind, and in the case before it, there had been no marriage. *Holtzman*, 193 Wis. 2d 667.

¶ 18. The *Holtzman* court formulated a test for courts to apply before exercising their equitable powers. *Id.* at 694. First, a circuit court must determine that the petitioner has a "parent-like relationship" with the child, and second, the circuit court must determine that a "significant triggering event" exists justifying state intervention in the child's relationship with a biological or adoptive parent. *Id.* If the petitioner establishes these two elements, then the court may consider whether visitation is in the child's best interest. *Id.* To establish the requisite triggering event, the petitioner "must prove [that the biological or adoptive parent] has interfered substantially with the petitioner's parent-like relationship with the child, and that the petitioner sought court ordered visitation within a reasonable time after the parent's interference." *Id.* at 695.

■

¶ 19. We conclude that *Holtzman* does not apply to cases brought under the special grandparent provision, Wis. Stat. § 767.43(3). After *Holtzman* was decided, the legislature enacted the special grandparent visitation provision, § 767.43(3), which expressly applies where there has not been a marriage, and, thus, no dissolution of a marriage. *See* § 767.43(3)(a), previously numbered § 767.245(3), *see* 1995 Wis. Act 68; 2005 Wis. Act 443, § 101. Section 767.43(2m) plainly provides that § 767.43(3), not § 767.43(1), applies to grandparents requesting visitation if the requirements in § 767.43(3)(a)-(c) apply: the child's parents have married each other,

paternity has been established by law if the grandparents are the parents of the child's father, and the child has not been adopted. Section 767.43(3) then sets forth three additional requirements after the three threshold criteria are met. Sec. 767.43(3)(d)-(f); *see* ¶ 14 above. There is no logical reason to engraft onto this plain and complete procedure for grandparent visitation in particular circumstances an additional requirement that was established for the purpose of exercising the court's equitable powers when no visitation statute applied. *See Holtzman*, 193 Wis. 2d at 689.[8] Neither the reasoning in *Holtzman* nor the plain language of § 767.43(3) supports such a conclusion.

## C. Rebuttable Presumption

¶ 20. Wohlers next argues that the trial court failed to apply a rebuttable presumption to Wohlers' determination of the visitation schedule that was in E.B.'s best interest.[9] *See Martin L.*, 299 Wis. 2d 768, ¶ 12 (court accords special weight to a fit parent's determination of grandparent visitation by applying a

[8] In *Rogers v. Rogers*, 2007 WI App 50, 300 Wis. 2d 532, 731 N.W.2d 347, in the context of a grandparent visitation petition under WIS. STAT. § 767.43(1), identical to § 767.245 (1991–92), *see* footnote 6, we questioned whether *Holtzman v. Knott*, 193 Wis. 2d 649, 533 N.W.2d 419 (1995), applied in a grandparent visitation case under § 767.43(1), but did not resolve the issue.

[9] In his appellate brief, Wohlers argues separately that the trial court erred in failing to give his decision regarding grandparent visitation "special weight" and the rebuttable presumption that his determination was in E.B.'s best interest. Wohlers misunderstands the proper legal standard. "Special weight" is not a separate element that the court is to assess. Rather, "the court accords special weight by applying a rebuttable presumption that the fit parent's decision regarding grandparent visitation is in the

rebuttable presumption that the parent's decision is in the best interest of the child). Specifically, Wohlers argues that the court did not indicate in its oral ruling or in the Findings of Fact, Conclusions of Law and Order that it had given his decision regarding grandparent visitation the rebuttable presumption that his determination was in E.B.'s best interest. Wohlers asserts that, at most, the court gave his visitation schedule proposal equal weight with the GAL's and the grandparents' proposals, citing the following from the court's oral decision:

> Having looked at this from all sides, I am going to split the baby here. That's what you have asked me to do today. I know nobody is going to be happy, but, again, I am doing the best that I can. One, I am going to use a template, the recommendations of the Family Court Counseling Service.

¶ 21. Taken alone, this statement may suggest that the court did not apply a rebuttable presumption to Wohlers' opinion on the best visitation schedule. However, we conclude, based on a careful review of the entire ruling, that the court applied the correct legal standard.

¶ 22. At the hearing, the parties repeatedly discussed the proper legal standard, and the court explicitly acknowledged its applicability to this case. In his presentation to the court, Wohlers' attorney, Donald Bruns, noted that Wohlers' determination of which schedule was in E.B.'s best interest was entitled to a rebuttable presumption. Both the grandparents and the GAL concurred with Wohlers regarding the proper

---

best interest of the child." *Martin L. v. Julie R.L.*, 2007 WI App 37, ¶ 12, 299 Wis. 2d 768, 731 N.W.2d 288 (citations and quotations omitted).

legal standard that the court was to give Wohlers' proposed visitation schedule. After considering the parties' explanations regarding the proper legal standard to apply, the court concluded the discussion by saying: "All right. Fair enough. With that understanding, Attorney Bruns."

¶ 23. A few minutes later, the GAL once again informed the court that, although the court must ultimately determine which visitation schedule was in E.B.'s best interest, it must first apply a rebuttable presumption to Wohlers' determination. The court responded as follows: "Agreed that has been consistent with my rulings to this point, and that's how we will proceed . . . ."

■

¶ 24. While the court did not explicitly refer to the rebuttable presumption standard when issuing its decision, the court's decision reflects an analytical process that shows the court applied the correct legal standard. First, the court rejected the idea that the experts' opinions—as opposed to Wohlers' own—were entitled to any special weight. After considering all of the evidence presented by experts and nonexperts, the court found that E.B. was attached to both his grandparents and to Wohlers and that breaking the attachment with the grandparents was not in E.B.'s best interest. The court also found that Wohlers had "enthusiastically moved towards parenthood" and that he had made "valiant efforts" to learn how to be a good parent. One expert, the court observed, testified E.B. needed to be with both parties and that the ideal grandparent visitation schedule would be every other week. Another expert testified that visitation with the grandparents one weekend a month was insufficient for E.B. to sustain the close bond he had with them.

121

¶ 25. Accordingly, we are satisfied that the court applied the correct legal standard to Wohlers' proposed grandparent visitation schedule in concluding that a different visitation schedule was ultimately in E.B.'s best interest in light of all of the credible evidence.

### D. Limiting the Scope of the Issues to School-Year Visitation

¶ 26. Wohlers argues that the trial court erred in limiting the scope of the issues before it to visitation during the school year. In his motion, Wohlers asked the Court "to enter an Order amending the Final Order herein to eliminate or establish periods of visitation commencing with the start of the 2007–2008 school year for E.B. with [the grandparents]." The trial court read Wohlers' motion as being limited by its own terms to modify only school-year visitation. The court's decision on the motion to amend states that Wohlers' "motion to modify the original Order addresses only a change in the school year schedule, and the request in that motion is what the Court is addressing in this Order."

¶ 27. Wohlers maintains that he was seeking review of all visitation periods by filing the motion, not just for the school year. He acknowledges that the scope of his motion may have been ambiguous on its face, but argues that his intent to seek modification of all visitation periods was subsequently clarified to the court. The grandparents argue that a memorandum of understanding drafted by Dr. Kenneth Waldron contemporaneous with Wohlers' motion clarifies that the parties intended to change only school-year visitation. In response, Wohlers argues that the memorandum of understanding is not part of the record and therefore we should not consider it in deciding this issue.

¶ 28. We conclude that the court erred by limiting the visitation issues to school-year visitation. We are persuaded that Wohlers' motion sought to modify the entire visitation schedule and not just the school-year schedule along the lines proposed by Wohlers in his proposed visitation schedule. Wohlers' court correspondence, trial brief, and arguments the morning of the trial leave no doubt that he was seeking modification of all visitation periods. In a September 2008 letter to the court, Wohlers wrote: "School year visitation is *not* what we seek amended. It is all components of the current judgment/order dealing with visitation which we seek amended." In his trial brief, Wohlers wrote: "We have stated and restated recently what *our* motion covers and we do so again: It is the entire visitation schedule commencing with the day [E.B.] entered kindergarten over a year ago." In court the morning of the trial, Wohlers' attorney stated that the scope of Wohlers' motion was "about [E.B.'s] visitation with the Whites going forward, school or no school." Wohlers' proposed visitation schedule submitted at trial plainly seeks changes to all visitation periods, not just school-year visitation.

¶ 29. Accordingly, we reverse the trial court's decision to limit the scope of Wohlers' motion to modify the visitation order, and remand for the court to address Wohlers' request to modify non-school-year visitation.[10]

---

[10] Wohlers also argues that the court erred in failing to require the grandparents to establish an entitlement to "continuing visitation rights" under Wis. Stat. § 767.43(3). We reject this argument. The court did not err in failing to require the grandparents to establish a "continuing" right to visitation because Wohlers' own motion—which only sought to reduce visitation by amending the 2007 order, not to end visitation by

## CONCLUSION

¶ 30. In sum, we conclude that the trial court did not err in declining to require the grandparents to prove a "significant triggering event" occurred because *Holtzman* does not apply to cases under WIS. STAT. § 767.43(3). Further, we conclude the trial court applied the correct rebuttable presumption standard to Wohlers' proposed visitation schedule as required by *Troxel*. Finally, we conclude the court erred by limiting the scope of Wohlers' motion to school-year visitation when he plainly requested review of non-school-year visitation as well. We therefore affirm in part and reverse in part and remand for the court to hold a hearing on Wohlers' motion regarding the grandparents' visitation schedule while E.B. is not in school.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings consistent with this opinion.

---

vacating the order —did not require the court to address whether the grandparents had a "continuing" visitation right. Wohlers' motion is entitled "Motion to Amend Final Order," and he has proposed a visitation schedule that modifies the grandparents' visitation and does not terminate it. As discussed above, Wohlers subsequently clarified the scope of his motion in correspondence and at the hearing, and it was to reduce visitation, not end it.