COURT OF APPEALS
DECISION
DATED AND FILED

March 17, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2159**

Cir. Ct. No. 2021TP1

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN RE THE TERMINATION OF PARENTAL RIGHTS TO V.J.T.,
A PERSON UNDER THE AGE OF 18:

JACKSON COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

K. M. G.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Jackson County: TODD L. ZIEGLER, Judge. *Affirmed.*

¶1       KLOPPENBURG, J.[1]  The circuit court determined that it was in the best interest of V.J.T., then two years old, to terminate the parental rights of V.J.T.'s father, K.M.G.[2]  K.M.G. appeals, arguing that the court erroneously exercised its discretion by failing to examine relevant facts that, according to K.M.G., would support dismissal of the petition to terminate his parental rights and by failing to consider a guardianship arrangement as an alternative to termination.  I reject K.M.G.'s arguments and affirm.

## BACKGROUND

¶2       V.J.T. is the non-marital child of K.M.G., the child's father, and S.T., the child's mother.  V.J.T. was removed from the parents' care three days after birth in September 2019 and placed in the care of A.S., the mother's cousin and current foster mother.

¶3       Jackson County Department of Health and Human Services (the County) filed a petition requesting termination of K.M.G.'s parental rights to V.J.T. in January 2021.  The petition alleged "continuing need of protection or services" and "failure to assume parental responsibility" under WIS. STAT. § 48.415(2) and (6) as grounds for termination.  The case proceeded to a jury trial on the alleged grounds for termination of K.M.G.'s parental rights.  After a three-day trial, the jury unanimously found that the County had established both the "continuing need of protection or services" and "failure to assume parental

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  The circuit court also terminated the parental rights of V.J.T.'s mother, S.T.  The termination of S.T.'s parental rights is not before this court in this appeal.

responsibility" grounds for termination of K.M.G.'s parental rights. The case proceeded to disposition.

¶4      At the dispositional hearing the circuit court heard testimony from the social worker assigned to the case, a child psychologist, and V.J.T.'s maternal grandfather, mother, and foster mother. Following the testimony, the circuit court ordered the termination of K.M.G.'s parental rights to V.J.T.

¶5      K.M.G. appeals. Additional facts pertinent to the appeal will be discussed below.

## DISCUSSION

¶6      K.M.G. argues that the circuit court erroneously exercised its discretion in two respects: (1) by failing to consider facts that, according to K.M.G., would support dismissing the petition to terminate his parental rights; and (2) by failing to consider a guardianship arrangement with V.J.T.'s maternal grandfather as an alternative to termination.

¶7      I will first state the standard of review, statutory framework and legal principles governing involuntary termination of parental rights. I will then explain my conclusion that the circuit court did not erroneously exercise its discretion in terminating K.M.G.'s parental rights or by failing to consider a guardianship arrangement as an alternative to termination.

## I.  Applicable Standard of Review, Statutory Framework, and Legal Principles

¶8      "The ultimate determination of whether to terminate parental rights is discretionary with the circuit court." *State v. Margaret H.*, 2000 WI 42, ¶27,

234 Wis. 2d 606, 610 N.W.2d 475. "We will affirm a circuit court's discretionary determination so long as it examines the relevant facts, applies the proper legal standard, and uses a demonstrated rational process to reach a conclusion that a reasonable judge could reach." *Martin L. v. Julie R. L.*, 2007 WI App 37, ¶4, 299 Wis. 2d 768, 731 N.W.2d 288.

¶9 Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights. *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402. "In the first, or 'grounds' phase of the proceeding, the petitioner must prove by clear and convincing evidence that one or more of the statutorily enumerated grounds for termination of parental rights exist." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856; *see also* WIS. STAT. § 48.415 ("Grounds for involuntary termination of parental rights."). If the circuit court finds that grounds for the termination of parental rights are proven, the court shall find the parent unfit. *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854; WIS. STAT. § 48.424(4). The second phase, the dispositional hearing, "occurs only after the fact-finder finds a WIS. STAT. § 48.415 ground has been proved and the court has made a finding of unfitness. In this step, the best interest of the child is the 'prevailing factor.'" *Tammy W-G.*, 333 Wis. 2d 273, ¶19 (internal citation omitted).

¶10 On appeal, K.M.G. challenges only the second, dispositional, phase, at the conclusion of which the circuit court determined that termination of K.M.G.'s parental rights was in V.J.T.'s best interest.

¶11 "At the dispositional hearing, the court may enter an order terminating the parental rights of one or both parents, WIS. STAT. § 48.427(3), or it

may dismiss the petition if it finds the evidence does not warrant the termination of parental rights. WIS. STAT. § 48.427(2)." *Julie A.B.*, 255 Wis. 2d 170, ¶28.

¶12    The prevailing factor at the dispositional phase in a termination case is the best interest of the child. *David S. v. Laura S.*, 179 Wis. 2d 114, 149, 507 N.W.2d 94 (1993). In determining whether it is in the best interest of the child that a parent's rights be terminated, "the [circuit] court 'should welcome' any evidence relevant to the issue of disposition, including any 'factors favorable to the parent,' and must at a minimum consider the six 'best interests' factors set forth in WIS. STAT. § 48.426(3)." *Steven V.*, 271 Wis. 2d 1, ¶27 (quoted source omitted).

¶13    WISCONSIN STAT. § 48.426(3) sets forth the six factors that a circuit court must examine in determining whether the termination of parental rights is in the best interest of the child:

> FACTORS. In considering the best interests of the child under this section the court shall consider but not be limited to the following:
>
> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the

5

> child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3). The weight to be given to each factor is a matter committed to the court's discretion. *See* **Margaret H.**, 234 Wis. 2d 606, ¶¶29-30 ("we cannot mandate the relative weight to be placed on" a factor).

## II. Analysis

¶14 K.M.G. does not dispute that the circuit court properly considered all six of the required factors under WIS. STAT. § 48.426(3). Nevertheless, K.M.G. argues that the court erroneously exercised its discretion in failing to examine certain facts that, according to K.M.G., would support the dismissal of the petition to terminate K.M.G.'s parental rights, namely, facts regarding the viability of a guardianship of V.J.T. K.M.G. also argues that the court had an obligation to consider guardianship as a specific alternative to termination, and failed to do so. I address each argument in turn.

### A. Failure to Consider Relevant Facts

¶15 K.M.G. argues that the circuit court failed to consider certain testimony of V.J.T.'s maternal grandfather, T.T., and the testimony of the child psychologist, Dr. Kathryn Hom.

¶16 Regarding T.T.'s testimony, K.M.G. argues that the circuit court failed to consider T.T.'s testimony that he is willing and able to serve as a guardian of V.J.T., that he has been involved in V.J.T.'s life since V.J.T. was born and visits V.J.T. weekly, and that T.T. and V.J.T.'s foster mother, A.S., have had disagreements that have the potential to affect T.T.'s relationship with V.J.T.

¶17    Regarding Dr. Hom's testimony, K.M.G. argues that the circuit court failed to consider her testimony regarding her observations of the relationship between V.J.T. and T.T., the strong and positive bond that exists between them, V.J.T.'s apparent secure attachment to T.T., the importance of secure attachments to child development, and the potential "attachment injuries" that can be caused by severance of a child's relationship with caregivers or family members. K.M.G. also argues that the court failed to consider Dr. Hom's similar testimony regarding V.J.T.'s relationship with K.M.G. and her ultimate recommendation that V.J.T.'s relationships with both T.T. and K.M.G. not be severed.

¶18    As I now explain, the record refutes K.M.G.'s argument that the circuit court failed to consider that testimony, and shows that the court considered all relevant and proper facts that weighed in favor and against dismissing the petition to terminate K.M.G.'s parental rights.

¶19    The circuit court began its remarks by addressing the factors in WIS. STAT. § 48.426(3) that it found to be "straightforward," stating that factors (a), (b), (e), and (f) all weighed "very strong[ly] … in favor of termination of parental rights."[3] *See* § 48.426(3)(a)-(f). However, the court spent considerably more time discussing factor (c), "[w]hether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to

---

[3] Specifically, the court remarked, regarding factors (a), (b), (e), and (f): "the likelihood of adoption is high;" "[V.J.T.] was removed [from the child's parents] at birth, and [the child's] health has been fine;" the "[d]uration of separation of parent and child … has been all of [V.J.T.'s] life …. It's hard to find a factor … being more strong than the whole life of a child;" and "it's very clear that [V.J.T.] is likely to enter into a much more stable and permanent family relationship as a result of termination."

As to factor (d), the wishes of the child, the circuit court stated that it would "skip" that factor as "[V.J.T.] is too young to express those."

sever these relationships," § 48.426(3)(c), and determining whether that factor would "tip[] the scales such that it is not in [V.J.T.]'s best interests to grant the termination." The court's discussion of this factor spanned six pages of transcript, and referenced T.T.'s testimony and Dr. Hom's testimony throughout its remarks.

¶20     Regarding T.T.'s involvement and bond with V.J.T., the circuit court stated the following.

> I don't necessarily question Dr. Hom's testimony that she observed a bond. I think there is.
>
> I think there's clearly a bond between [V.J.T.] and [T.T.]. That's been consistent. [T.T.] testified. Certainly, [T.T.] … cares very much for [V.J.T.], has a relationship. I believe [V.J.T.] has a good relationship with him.

The circuit court also discussed the frequency with which T.T. has been visiting V.J.T., stating "someone that sees [V.J.T.], I believe … every two weeks … that visit in regards to a young child is a pretty substantial relationship."

¶21     Regarding V.J.T.'s relationship with K.M.G., the circuit court stated that while the extent of their relationship is "debatable," the court would "assume that [K.M.G.] has, by some definition, a substantial relationship with his [child]."

¶22     Consistent with Dr. Hom's testimony, the circuit court recognized that there would be some harm caused to V.J.T. by severing V.J.T.'s relationships with T.T. and K.M.G. However, the court remarked that while the situation was "difficult," the harm caused by the termination of K.M.G.'s parental rights and therefore severance of V.J.T.'s relationships with K.M.G. and T.T., would be "somewhat mitigated by [V.J.T.]'s age."

¶23     Showing further consideration of the bond between V.J.T. and T.T. and the importance of maintaining that relationship, the circuit court discussed the

testimony regarding the contentious relationship between T.T. and A.S. and how that would affect T.T.'s ability to maintain a relationship with V.J.T. Specifically, the court noted that it was "concern[ed]" by A.S.'s testimony that if she adopted V.J.T., she would not let T.T. have a relationship with the child if T.T. would not agree to certain conditions.[4] The court acknowledged that for the purposes of the dispositional hearing and consideration of the statutory factors, it needed to assume that the relationship between T.T. and V.J.T. would be severed if K.M.G.'s parental rights were terminated, but that it would ask A.S. to "have an open mind" about letting T.T. maintain a relationship with V.J.T. because "it's been very clearly established … that that relationship is a strong relationship."

¶24     Also consistent with Dr. Hom's testimony regarding attachment injuries and harm that can be caused by severing a child's relationships with his or her caregivers, the circuit court found that there would be harm in severing V.J.T.'s relationship with A.S., who has cared for the child since birth. Regarding the potential that V.J.T. would be removed from A.S.'s care should the petition for termination not be granted, the court stated:

> I'm not saying that this granting of the termination isn't going to be harmful to [V.J.T.] in some way … because [the guardian ad litem[5]] made a very good point that termination is also to address permanence for a child ….

---

[4] T.T. is A.S.'s biological uncle. Pursuant to that relationship, A.S. told T.T. that if she adopts V.J.T., T.T. was "welcome to be in [V.J.T.'s] life as [the child's] uncle," but if T.T. "ha[d] an issue with that, then [T.T.] just won't be part of [V.J.T.'s] life." T.T. testified that he did not think it was in V.J.T.'s best interest for A.S. to refer to T.T. as V.J.T.'s uncle rather than grandfather, which caused an ongoing dispute between T.T. and A.S.

[5] A guardian ad litem is an attorney appointed to represent the "best interests of the person or unborn child for whom the appointment is made." WIS. STAT. § 48.235(2), (3). Section 48.235(1)(c) mandates that the circuit court "appoint a guardian ad litem for any child who is the subject of a proceeding to terminate parental rights."

> Lack of permanency would be harmful. Taking [V.J.T.] away, and I'm not saying this is … going to happen anytime soon—but taking [V.J.T.] away from really the only parent [the child's] ever known would be very harmful.

¶25 The court weighed the testimony regarding V.J.T.'s relationships with T.T. and K.M.G. and the potential for harm in severing those relationships, as well as the testimony regarding V.J.T.'s relationship with A.S. and the harm in severing that relationship. The circuit court stated that despite some "concern," primarily pertaining to severing the relationship between V.J.T. and T.T., "the factors as a whole clearly weigh in favor of granting the termination." The court concluded that "it is in the best interests [of V.J.T.] to grant the termination of parental rights against … [K.M.G.]."

¶26 K.M.G.'s argument that the circuit court failed to consider relevant facts that, according to K.M.G., would support dismissal of the petition is, in effect, an argument that the court should have weighed the evidence differently. However, the weight and credibility of the evidence are for the circuit court to determine. *See **Lessor v. Wangelin***, 221 Wis. 2d 659, 665-66, 586 N.W. 2d 1 (Ct. App. 1998) ("When the [circuit] court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and of the weight to be given to each witness's testimony."). The record demonstrates that the court considered the testimony highlighted by K.M.G. together with the other evidence relevant to each factor and made its determination based on the evidence as a whole. Accordingly, the court's decision represents a proper exercise of discretion.

## B. Consideration of Alternatives to Termination

¶27 K.M.G. argues that the circuit court had an obligation to consider a guardianship of V.J.T. with T.T. as an alternative to termination of K.M.G.'s

parental rights and that the court erred by failing to do so. However, the record refutes K.M.G.'s argument that the court failed to consider alternatives to termination, and K.M.G. cites no legal authority that supports his assertion that the court was required to consider any one specific alternative to termination at the dispositional hearing.[6]

¶28 The record shows that the circuit court did, at least implicitly, consider and reject alternatives to termination of K.M.G.'s parental rights. As summarized above, the court heard testimony relevant to both supporting and opposing such alternatives, and the court weighed that evidence in favor of termination as being in V.J.T.'s best interest.

¶29 To repeat, the circuit court heard T.T.'s testimony that he was willing and able to serve as V.J.T.'s guardian, as well as testimony about T.T.'s relationship with V.J.T. The court recognized that T.T. and V.J.T. have a "good relationship" and that the bond between them is "substantial," and expressed concern regarding severing the relationship between T.T. and V.J.T. The court also heard testimony about the relationship between V.J.T. and A.S. and about how A.S. has been V.J.T.'s primary caregiver since the child was born. Consistent with that testimony, the court found that it would be "very harmful" to "tak[e] [V.J.T.] away from really the only parent [the child's] ever known."

¶30 As explained in ¶¶19-25 above, it is evident from the record that the circuit court properly considered what disposition would be in V.J.T.'s best interest. Although the court did not explicitly decide that a guardianship was not

---

[6] K.M.G. does not point to any evidence in the record that he requested that the circuit court appoint T.T. as the child's guardian.

in V.J.T.'s best interest, the court's remarks and decision to terminate K.M.G.'s parental rights establish that it implicitly rejected alternative arrangements with T.T. in the form of a guardianship.

¶31    K.M.G. argues that the circuit court was required explicitly to consider guardianship as an alternative to termination based on *A.B. v. P.B.*, 151 Wis. 2d 312, 444 N.W.2d 415 (Ct. App. 1989).  In that case, the court stated, "alternatives to termination must be explored.  Only if termination is still in the child's best interests after consideration but rejection of these alternatives, is termination permitted."  *Id.* at 322 (citation omitted).  However, *A.B.* is easily distinguishable from the present case.

¶32    In *A.B.*, the unmarried parents of an almost two-year-old child sought to voluntarily terminate the father's parental rights.  *Id.* at 315.  The father did not have any significant relationship with the child or the child's mother.  *Id.* at 315-17.  The circuit court granted the termination and this court reversed, concluding that there was insufficient evidence in the record to indicate that the father's consent to the termination was voluntary because "there is nothing in the appellate record that indicates that the father was aware of alternatives to termination[.]"  *Id.* at 319.

¶33    While the court reversed because of an insufficient voluntariness analysis, it also continued its analysis to include determining whether termination was in the best interest of the child in anticipation of the termination petition being refiled.  *Id.* at 320.  The court noted that the circuit court's rationale in granting the termination "focused on difficulties the parents were having in coping with their strained relationship and the mother's desire to get the father out of her life," and also noted that the termination of the father's parental rights would terminate his

obligation to support his child. *Id.* at 321-22. The court stated that voluntary termination of parental rights without exploration of alternatives was against public policy in those circumstances, explaining:

> [p]arental rights may not be terminated merely to advance the parents' convenience and interests, either emotional or financial. Furthermore, alternatives to termination must be explored. Only if termination is still in the child's best interests after consideration but rejection of these alternatives, is termination permitted. Simply put, no parent may blithely walk away from his or her parental responsibilities.

*Id.* at 322 (citations omitted).

¶34 The court opined that, because "[t]here is no showing that the parents' relationship adversely affects their daughter to the extent that termination is warranted—or that it threatens to do so[,]" alternatives to the "drastic consequences" of termination were likely to better serve the child's best interest. *Id.* at 322-23 & n.6.

¶35 Notably, the court in *A.B.* distinguished those circumstances from cases involving involuntary termination of parental rights, stating, "[t]his case is not one where termination would advance the prospects of a proposed adoption and a child's resulting passage from instability to stability." *Id.* at 322 (citation omitted).

¶36 Nothing in *A.B.* requires a circuit court, on a petition for involuntary termination of parental rights such as that filed here, to first examine any one particular alternative to termination when evaluating which disposition is in the child's best interest. The present case involves neither a voluntary termination of parental rights nor, as explained above, a dispositional decision made without consideration of any alternatives to involuntary termination. As stated, the circuit

13

court here properly considered the six required factors in WIS. STAT. § 48.426(3) and all relevant facts before making its determination that termination of K.M.G.'s parental rights was in V.J.T.'s best interest.

## CONCLUSION

¶37 For the reasons stated above, the circuit court's order terminating K.M.G.'s parental rights is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.